# Illinois Official Reports

## Appellate Court

*People v. Ocon*, **2014 IL App (1st) 120912**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN OCON, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0912 |
| Filed | February 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed *sua sponte* defendant's *pro se* petition under section 2-1401 of the Code of Civil Procedure alleging that his sentences were unconstitutional, notwithstanding his contention that the petition was not properly served on the State and that the dismissal was premature, since the State received actual notice in court of the petition through the appearance of a prosecutor at the proceedings during which the judge stated that the petition had been filed, the State neither objected to the improper service nor responded to the petition, and when the period allowed for a response had passed, the trial court did not err in dismissing the petition based on the correction of the constitutional defects in the truth-in-sentencing legislation by Public Act 89-404. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-08905; the Hon. Joseph G. Kazmierski, Jr., Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Alison L.S. Shah, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michele Grimaldi Stein, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Juan Ocon appeals the trial court's *sua sponte* dismissal of his *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). Defendant argues that the case must be remanded because the trial court's dismissal was premature since the State was not properly served with defendant's petition.

¶ 2    Following a February 2002 jury trial, defendant was found guilty of one count of first degree murder and one count of attempt first degree murder. We will discuss the facts as necessary for the issues raised on appeal. For a more detailed discussion of these facts, see *People v. Ocon*, No. 1-02-1567 (Dec. 15, 2003) (unpublished order under Supreme Court Rule 23).

¶ 3    The evidence presented at trial established that on the evening of January 8, 2000, Dauntrez Snowden went out with his friends Nicholas Mobley, William Peppers and Delbert Guy. The men were in a maroon compact car. Snowden was driving while Peppers was in the passenger seat, Mobley was sitting in the backseat on the driver's side and Guy was seated in the backseat behind the passenger. The men had gone out to celebrate Peppers' departure for college the next day.

¶ 4    That same night, at about 10:30 p.m., William Solis and David Neira, who had been driving around for several hours, met up with some acquaintances in a van. Solis and Neira climbed into the van. The driver was Jose Vidaurri, a member of the Satan Disciples street gang. There were several passengers in the van, including defendant, Alvero Vera, Benjamin Pienero, and Francisco Rodriguez. Defendant, a member of the Latin Jivers street gang, was in the passenger seat and Rodriguez and Pienero were in the middle-row captain's chairs while

Solis, Vera and Neira were seated on the back bench. The van belonged to Rodriguez. At the time, the Satan Disciples and the Latin Jivers "were friendly gangs towards each other."

¶ 5 At approximately 12:15 a.m., the van pulled up beside Snowden's car near Erie and Paulina Streets. The van was "an American made, Chevy or Ford, dark brown, appeared to be tan, light brown stripes, had running boards, maybe like a ladder or tire rack on the back." Mobley and Guy saw a male Hispanic step out on the running board and make gestures toward the car. According to Solis, defendant started "throwing up gang signs" in the direction of the car. No one in the car made any response to the gestures.

¶ 6 Snowden drove away from the van, but it followed the car. Defendant encouraged Vidaurri to keep up the chase. Snowden told Peppers to get the cellular phone from beneath the seat and call the police. On Jackson Street, the van approached the car at a high rate of speed. Defendant fired several shots from the passenger window, and Vera opened the sliding door of the van and also fired several shots at the maroon car. Vidaurri kept driving and drove to an alley where the men left the van. The guns were abandoned in the van.

¶ 7 Snowden and Mobley were hit by the gunfire. Mobley was shot in the left leg and right foot. Snowden was shot in the stomach and began to lose control of the car. At some point, the car and the van collided, ripping one of the mirrors from the car. Peppers threw the car in park. Chicago police officers saw the victims' car roll through a red light and come to a stop. The officers called paramedics to the scene. Mobley and Snowden were transported to Cook County Hospital for treatment. Mobley was treated and recovered, but Snowden suffered a gunshot to his abdomen and died at the hospital on January 9, 2000.

¶ 8 On January 9, 2000, at 7:30 p.m., Detective John Climack and his partner canvassed the 1300 West Jackson area. In the early morning hours of January 10, 2000, he described the van and offender to officers in Districts 12, 13, and 14. Guy and Mobley later met with the detectives working on the case to make a composite of the van and the occupant they had seen. The composites were distributed to area police officers, including Sergeant Rich Nigro, who received the original case report, a composite of the van, and a composite of a suspect.

¶ 9 At approximately 9:30 p.m., Sergeant Nigro was patrolling near Noble and Grand Streets when he saw a van that matched the description and the composite. He followed the van and curbed it after it committed a traffic violation. The area was approximately six or seven blocks from the intersection of Chicago and Ashland. He asked the driver to produce a license, but the driver was unable to do so. There were several male Hispanics in the van. Defendant was one of them and he matched the suspect composite.

¶ 10 Defendant was questioned by the police, but he initially denied knowing about the shooting. On January 13, 2000, Detective Climack advised defendant of his rights and spoke with him again. Defendant admitted his involvement in the shooting. Defendant said that on January 8, 2000, he had been riding around in the van with Rodriguez. At one point, Vidaurri joined them and started driving. Vidaurri gave defendant a black and silver 9-millimeter handgun. They pulled the van up next to a dark-colored car and defendant started throwing gang signs. The other car took off, and the van followed the car. On Jackson, they pulled up to the car again, and defendant "rolled down the window, stuck the gun out the window, and shot into the car." Vera started to shoot from the backseat. The car bumped into the van. They drove

the van to a lot on Halsted, and everyone got out. Climack showed defendant a picture of the gun, which defendant identified as the gun he used. Defendant gave a similar statement later that day to an assistant State's Attorney, but declined to have the statement memorialized.

¶ 11    The parties stipulated that a gun was recovered from 1727 West Erie. The State presented expert testimony that some of the recovered bullets and shell casings were fired from the recovered gun. Defendant's cousin testified that defendant, his girlfriend and his children were at her house on January 8, 2000, from 5 to 9:30 p.m.

¶ 12    Following deliberations, the jury found defendant guilty of the first degree murder of Snowden and the attempted first degree murder of Mobley. At the sentencing hearing, the trial court sentenced defendant to concurrent terms of 45 and 15 years in prison.

¶ 13    On direct appeal, defendant argued that: (1) the trial court erred in denying his motion to quash his arrest and suppress evidence; (2) he was not proven guilty beyond a reasonable doubt; (3) he was denied a fair trial because of multiple instances of prosecutorial misconduct during closing argument; and (4) his sentence was excessive. We affirmed defendant's convictions, but remanded for defendant to be sentenced to consecutive prison terms. See *Ocon*, No. 1-02-1567.

¶ 14    In September 2004, defendant filed a *pro se* postconviction petition, alleging multiple claims of ineffective assistance of trial counsel. In October 2009, the State filed a motion to dismiss the petition, which the trial court granted. Defendant appealed the dismissal. In November 2011, the court affirmed the dismissal of defendant's postconviction petition. See *People v. Ocon*, 2011 IL App (1st) 100255-U.

¶ 15    In December 2011, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). In the petition, defendant asserted that his sentences were unconstitutional because Public Act 90-592 (Pub. Act 90-592 (eff. June 19, 1998)) violated the single subject clause of the Illinois Constitution. Defendant's proof of service to the petition stated that it was placed in the prison mail system on December 7, 2011, to the clerk of the circuit court and the Cook County State's Attorney.

¶ 16    On January 10, 2012, the trial judge stated on the record that defendant had filed a section 2-1401 petition. The judge said he would review the matter and continued the case until February 14, 2012. The report of proceedings for January 10, 2012, indicates that an assistant State's Attorney was present in the courtroom at the time of those proceedings. On February 14, 2012, the trial judge *sua sponte* dismissed the petition in a written order, finding that section 2-1401 petition was not the proper vehicle to raise a constitutional challenge. The judge also explained that the Illinois Supreme Court had ruled in *People v. Reedy*, 186 Ill. 2d 1, 11 (1999), that Public Act 90-592 cured the defects in the truth-in-sentencing legislation from Public Act 89-404 (Pub. Act 89-404 (eff. Aug. 20, 1995)) and defendant's claim lacked merit.

¶ 17    This appeal followed.

¶ 18    On appeal, defendant argues that the trial court's dismissal of his section 2-1401 petition was premature because he failed to properly serve the State with the petition. Specifically, defendant asserts that the State was never properly served his petition because according to

- 4 -

Supreme Court Rule 105(b), service cannot be made through regular mail. See Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). Defendant concedes that his section 2-1401 petition lacks merit, but he continues to seek a remand on the technical notice requirement.

¶ 19   The State responds that it is unclear from the record on appeal whether defendant failed to comply with Rule 105(b), and the State had actual notice of the petition because an assistant State's Attorney was present when the petition was docketed on January 10. According to the State, because it had an opportunity to object to improper service but declined to do so, it waived any objection to improper service and submitted to the court's jurisdiction.

¶ 20   Section 2-1401 sets forth a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401 (West 2010). Section 2-1401 requires that the petition be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. 735 ILCS 5/2-1401(b) (West 2010). "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)).

¶ 21   Further, the statute provides that petitions must be filed not later than two years after the entry of the order or judgment, but offers an exception to the time limitation for legal disability and duress or if the ground for relief is fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2010). "Petitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002).

¶ 22   "A meritorious defense under section 2-1401 involves errors of fact, not law." *Pinkonsly*, 207 Ill. 2d at 565. A section 2-1401 petition differs from a postconviction petition. "A postconviction petition requires the court to decide whether the defendant's constitutional rights were violated at trial (see 725 ILCS 5/122-1(a) (West 2002)); a section 2-1401 petition, on the other hand, requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment." *Pinkonsly*, 207 Ill. 2d at 566.

¶ 23   Supreme Court Rule 106 provides that notice for the filing of section 2-1401 petitions is governed by Rule 105. Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). Supreme Court Rule 105 provides that notice may be served by either summons, certified or registered mail, or by publication. Ill. S. Ct. R. 105(b). Once notice has been served, the responding party has 30 days to file an answer or otherwise appear. Ill. S. Ct. R. 105(a). "The notice requirements of Rule 105 are designed to prevent a litigant from obtaining new or additional relief without first giving the defaulted party a renewed opportunity to appear and defend." *Albany Bank & Trust Co. v. Albany Bank & Trust Co.*, 142 Ill. App. 3d 390, 393 (1986). "The object of process is to notify a party of pending litigation in order to secure his appearance." *Professional Therapy Services, Inc. v. Signature Corp.*, 223 Ill. App. 3d 902, 910 (1992) (citing *Mid-America Federal Savings*

*& Loan Ass'n v. Kosiewicz*, 170 Ill. App. 3d 316, 324 (1988)); *Public Taxi Service, Inc. v. Ayrton*, 15 Ill. App. 3d 706, 712 (1973)). " 'In construing sufficiency of the notice, courts focus not on "whether the notice is formally and technically correct, but whether the object and intent of the law were substantially attained thereby." ' " *Professional Therapy Services*, 223 Ill. App. 3d at 910-11 (quoting *In re Marriage of Wilson*, 150 Ill. App. 3d 885, 888 (1986), quoting *Fienhold v. Babcock*, 275 Ill. 282, 289-90 (1916)).

¶ 24 "Section 2-1401 petitions are essentially complaints inviting responsive pleadings." *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). "As with complaints generally, when the opposing party elects to forgo filing a motion attacking the sufficiency of the petition and answers on the merits, the respondent is deemed to have waived any question as to the petition's sufficiency, and the petition will be treated as properly stating a cause of action." *Vincent*, 226 Ill. 2d at 8. "Similarly, if the respondent does not answer the petition, this constitutes an admission of all well-pleaded facts [citation], and the trial court may decide the case on the pleadings, affidavits, exhibits and supporting material before it, including the record of the prior proceedings." *Vincent*, 226 Ill. 2d at 9.

¶ 25 Applying this case law to section 2-1401 petitions, the supreme court held that "responsive pleadings are no more required in section 2-1401 proceedings than they are in any other civil action" and it rejected "the notion that the trial court was prohibited from acting because of the lack of a responsive pleading from the State." *Vincent*, 226 Ill. 2d at 9. "Case law has long recognized that such a judgment, whether it be characterized as a judgment on the pleadings or a dismissal, can be entered by the court notwithstanding the absence of a responsive pleading." *Vincent*, 226 Ill. 2d at 10.

¶ 26 Here, defendant contends that the 30-day period had not begun because the State was never properly served with notice of his section 2-1401 petition. Defendant relies on the decisions in *People v. Laugharn*, 233 Ill. 2d 318 (2009), *People v. Prado*, 2012 IL App (2d) 110767, and *People v. Nitz*, 2012 IL App (2d) 091165, to support his argument that the dismissal was premature because the State was not properly served. In *Laugharn*, the supreme court vacated a dismissal as premature when the trial court *sua sponte* dismissed the defendant's section 2-1401 petition seven court days after it was filed. *Laugharn*, 233 Ill. 2d at 323. The supreme court found that the petition was not "ripe for adjudication" because the dismissal "short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Laugharn*, 233 Ill. 2d at 323. The supreme court clarified its holding in *Vincent*, that while a trial court may *sua sponte* dismiss a section 2-1401 petition, such action was not authorized prior to the expiration of the 30-day period for a response. *Laugharn*, 233 Ill. 2d at 323.

¶ 27 In *Prado*, the record was unclear when the defendant filed his section 2-1401 petition. The proof of service indicated one date, May 13, but the petition was file-stamped by the circuit clerk on June 10, 2011. The trial court *sua sponte* dismissed the petition on July 7, 2011. *Prado*, 2012 IL App (2d) 110767, ¶ 3. The defendant appealed the dismissal and the reviewing court vacated the dismissal, finding it to be premature because the State was not properly served with notice of the petition. *Id.* ¶ 12. The State argued that "the petition was properly dismissed with prejudice, because defendant attempted to serve it and because judicial

efficiency renders modification of the order unnecessary." *Id.* ¶ 10. The court disagreed, but noted that "[s]hould the State wish to make the disposition of cases such as this one more efficient, the best course would be to waive an objection to the defective service. The action could then proceed normally through an adjudication on the merits." *Id.* ¶ 12.

¶ 28    The court in *Prado* relied on the Fourth District's decision in *Powell v. Lewellyn*, 2012 IL App (4th) 110168, for support. In *Powell*, the defendant filed a *pro se* motion for injunctive relief, which the trial court dismissed *sua sponte* less than two weeks later. It did not appear that the defendants had been served with notice or a summons. *Id.* ¶ 10. The reviewing court, relying on *Laugharn*, found the dismissal to be premature when the defendants had not been served with the petition. *Id.* ¶ 11.

¶ 29    Defendant also cites the decision in *Nitz* to argue for alternative relief. In *Nitz*, the defendant filed a section 2-1401 petition with the court on September 23, 2009, but did not give notice to the State. *Nitz*, 2012 IL App (2d) 091165, ¶¶ 4-5. Less than 30 days later on October 21, 2009, the trial court dismissed the petition *sua sponte*. The court noted that an assistant State's Attorney was present in court at that time, but did not participate in the proceedings. *Id.* ¶ 6. Defendant's only argument on appeal was that the trial court erred in dismissing his petition prior to the expiration of the 30-day period for a response. *Id.* ¶ 8.

¶ 30    The reviewing court held that the 30-day period had never started because the State was never served with notice of the petition, but the dismissal was proper because a failure to give proper notice results in a deficient petition. *Id.* ¶ 13.

> "If the State in our case had waived service and appeared, then the *Vincent* and *Laugharn* principles would apply. But no such waiver occurred. Consequently, the 30-day period is irrelevant, because it will never commence. A remand 'for further proceedings' would be meaningless, because no 'further proceedings' will occur. The State will never answer or move to dismiss, and the State cannot be defaulted, because it was never served. Thus, remand would place the trial court in the position of being able to do nothing while the case remains on its docket permanently." *Id.* ¶ 12.

¶ 31    Unlike the cases cited by defendant, an assistant State's Attorney was present in court when the instant petition was docketed and the trial court's dismissal was entered after the 30-day period for a response had passed. Although the record is unclear whether defendant properly served the State with his section 2-1401 petition, the State had actual notice of the filing of the section 2-1401 petition. The report of proceedings from January 10, 2012, indicates that an assistant State's Attorney was present for defendant's case when the trial judge docketed the petition. This is in contrast with the facts in *Nitz* where the prosecutor was present only when the case was dismissed, which did not permit time for the State to receive notice of the petition and choose to respond. Here, the State received actual notice of the petition on that date and the 30-day period commenced in which the State had the option to respond. The State maintains that it waived any objection to the lack of proper service and submitted to the court's jurisdiction by remaining silent during those proceedings. The trial judge entered his written dismissal on the merits more than 30 days later at the next court date on February 14, 2012.

¶ 32    "[A] petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint, 'thereby seeking to be bound to the court's resolution' thereof." *In re M.W.*, 232 Ill. 2d 408, 426 (2009) (quoting *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004)). "A respondent or defendant may consent to personal jurisdiction by his appearance, or he may have personal jurisdiction imposed upon him by effective service of summons." *M.W.*, 232 Ill. 2d at 426. "Once the circuit court acquires personal jurisdiction over a party, it has the power to impose personal obligations on him [citation] and that jurisdiction continues until all issues of fact and law in the case are determined [citation]." *M.W.*, 232 Ill. 2d at 426.

¶ 33    In *M.W.*, the minor-respondent was the subject of a delinquency proceeding. Her father was not properly served with the original delinquency petition or an amended petition that was filed later. However, respondent's father appeared in court at the detention hearing and was given a copy of the original petition, but he did not appear at any subsequent proceedings. *M.W.*, 232 Ill. 2d at 413-14. On appeal, respondent argued that the adjudication of delinquency was void for lack of subject matter jurisdiction because her father was not properly served with notice of the amended petition. The appellate court agreed and vacated the adjudication. *M.W.*, 232 Ill. 2d at 414.

¶ 34    The supreme court reversed the appellate court's holding, finding that the trial court's subject matter jurisdiction "was invoked when the State filed the petition for adjudication of wardship." *M.W.*, 232 Ill. 2d at 423. Further, the court rejected the respondent's argument that the trial court lacked personal jurisdiction over her father, finding that she lacked standing to object to improper service. *M.W.*, 232 Ill. 2d at 427. The supreme court held that "a party may 'object to personal jurisdiction or improper service of process only on behalf of himself or herself, since the objection may be waived.' " *M.W.*, 232 Ill. 2d at 427 (quoting *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29 (1998)). Additionally, the court found that personal jurisdiction was obtained when both parents appeared in court because under the Juvenile Court Act of 1987, "absent formal service, the 'appearance of the minor's parent *** shall constitute a waiver of service and submission to the jurisdiction of the court.' " *M.W.*, 232 Ill. 2d at 427-28 (quoting 705 ILCS 405/5-525(4) (West 2004)).

¶ 35    This case presents an unusual situation in which defendant is objecting to the lack of proper service of his petition on the State. We agree with the State that it received actual notice of the filing of defendant's section 2-1401 petition through the court appearance of an assistant State's Attorney on January 10. Thus, the purpose of service was achieved, notice of the litigation and an appearance. See *Professional Therapy Services*, 223 Ill. App. 3d at 910. The State was notified of the petition at that time and declined to file a response in the 30-day period. Unlike *Prado*, the record in this case established that an assistant State's Attorney was present in court when the petition was docketed, which served as actual notice to the State. As *Vincent* held, the State is not required to respond. The petition was therefore "ripe for adjudication" when the trial court *sua sponte* entered a written dismissal order after the 30-day period allotted for a response. Once the State appeared before the court, it received actual notice and it could decide whether to file a response. See *Public Taxi Service*, 15 Ill. App. 3d at 713 ("If actual notice is the goal, and it is, notifying [a party] through his attorney was far better

than resorting to publication–the only remaining method of notification available to [the defendant] under the rule.").

¶ 36    Defendant relies on the Second District's decision in *People v. Maiden*, 2013 IL App (2d) 120016, to require the State to explicitly waive any objection to improper service. In *Maiden*, the defendant filed a section 2-1401 petition in April 2011. At a hearing in June 2011, the prosecutor informed the trial court that it never received a copy of the defendant's petition. The court allowed an extension to give the State 30 days to file a response or motion. At the next court date, the prosecutor stated that the State did not intend to file anything in response to the defendant's petition. The trial court then dismissed the petition *sua sponte*. *Id.* ¶¶ 4-5.

¶ 37    On appeal, the defendant argued that the trial court erred in dismissing his petition *sua sponte* because it was not properly served and the dismissal was premature under *Prado*. The State responded that it explicitly waived service and the dismissal was timely. *Id.* ¶ 17. The reviewing court considered section 2-301 of the Code of Civil Procedure, which details the manner in which a party may object to the court's personal jurisdiction. Section 2-301 provides, in relevant part:

> "(a) Prior to the filing of any other pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process. Such a motion may be made singly or included with others in a combined motion, but the parts of a combined motion must be identified in the manner described in Section 2-619.1. Unless the facts that constitute the basis for the objection are apparent from papers already on file in the case, the motion must be supported by an affidavit setting forth those facts.

> (a-5) If the objecting party files a responsive pleading or a motion (other than a motion for an extension of time to answer or otherwise appear) prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person." 735 ILCS 5/2-301(a), (a-5) (West 2010).

¶ 38    The *Maiden* court concluded that section 2-301 required a party to explicitly waive an objection to personal jurisdiction. *Maiden*, 2013 IL App (2d) 120016, ¶ 27. "Absent a specific motion, responsive pleading, or explicit statement of a waiver of improper service and an affirmative statement that no motion or responsive pleading would be filed, the State did not waive an objection to the improper service and was not yet in default for failing to answer or otherwise plead. As a result, the 30 days for the State to file a responsive pleading never commenced, and the trial court acted prematurely when it dismissed the petition *sua sponte*." *Id.*

¶ 39    We disagree with this interpretation of section 2-301. "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). "The best evidence of legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its

plain and ordinary meaning." *Donald A.G.*, 221 Ill. 2d at 246. " 'A court should not depart from the language of the statute by reading into it exceptions, limitations or conditions that conflict with the intent of the legislature. [Citation.]' " *People v. Martinez*, 184 Ill. 2d 547, 550 (1998) (quoting *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 351 (1998)).

¶ 40    Section 2-301 is permissive. It provides that a party "*may* object to the court's jurisdiction over the party's person" if it follows the statute. (Emphasis added.) 735 ILCS 5/2-301(a) (West 2010). "Except in very unusual circumstances affecting the public interest, the legislature's use of the word 'may' indicates that the statute is permissive as opposed to mandatory." *Canel v. Topinka*, 212 Ill. 2d 311, 326 (2004). Section 2-301 does not require a party to object to the court's personal jurisdiction over it, but permits it to do so. The purpose of section 2-301 is to detail the manner in which a party may raise such an objection or risk waiving it. See 735 ILCS 5/2-301 (West 2010). The statute does not require a party to explicitly state, verbally or in writing, that it is choosing not to object. We decline to read any additional requirements into the statute.

¶ 41    Here, the State received actual notice in court of defendant's section 2-1401 petition. The State's presence at the proceedings satisfied the purpose of Rule 106, which is to provide notice to the responding party. The State received such notice through its appearance at the proceedings. The State was permitted to object to improper service under section 2-301, but it chose not to object. Nor did the State respond to the petition, which was also permitted. Once the 30-day period for a response passed, the petition was ripe for adjudication and the trial court was able to dismiss defendant's petition *sua sponte*. The trial court did not err in dismissing defendant's petition.

¶ 42    Further, we note that defendant has not argued that there is any merit to his petition and has conceded that the petition, in fact, lacks merit. Any remand when the petition lacks merit would be a waste of judicial resources.

¶ 43    Since we have concluded that the trial court's *sua sponte* dismissal was not premature and defendant has not offered any argument on the merits, we affirm the trial court's dismissal of defendant's section 2-1401 petition.

¶ 44    Affirmed.