# Illinois Official Reports

## Appellate Court

---

**People v. Lake, 2014 IL App (1st) 131542**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAMONTE LAKE, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1542 |
| Filed | December 29, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 93-CR-1352; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Jennifer L. Bontrager, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha Marie Kelly, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.

Presiding Justice Palmer and Justice Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant Lamonte Lake appeals the trial court's *sua sponte* dismissal of his *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). Defendant argues that (1) the addition of a three-year term of mandatory supervised release (MSR) violated his due process rights; and (2) the case must be remanded because the trial court's dismissal was premature since the State was not properly served with defendant's petition.

¶ 2   Following a 1996 jury trial, defendant was found guilty of first degree murder of 14-year-old Alvin Gilmore and sentenced to a term of 45 years in the Illinois Department of Corrections. Defendant's conviction and sentence were affirmed on direct appeal. *People v. Lake*, 298 Ill. App. 3d 50 (1998).[1] Defendant has unsuccessfully challenged his conviction and sentence several times in the form of postconviction petitions, a petition for writ of *mandamus*, and section 2-1401 petitions. See, *e.g.*, *People v. Lake*, No. 1-00-2049 (2002), *People v. Lake*, No. 1-07-3100 (2009), and *People v. Lake*, No. 1-09-1960 (2010) (unpublished orders under Supreme Court Rule 23); *People v. Lake*, 2012 IL App (1st) 110219-U.

¶ 3   The reviewing court on direct appeal described the circumstances that led to the shooting death of a 14-year-old as follows. "Events that began with a street encounter between two women and a slap ended on December 26, 1992, with a hail of bullets being fired at and into a building with the resultant death of Alvin Gilmore, who suffered a gunshot wound to the head." *Lake*, 298 Ill. App. 3d at 52.

¶ 4   The court then summarized the evidence at trial:

"On December 26, 1992, Lashundia Davis, while on her way to a store by her home, ran into Tineshea Lake, who was with two other women, Rashawn Jackson and Kimberly Manning. Tineshea had previously dated Lashundia's boyfriend, Orlando Potts. Rashawn approached Lashundia, said something to her and slapped her across the face. At this point, Tineshea said 'let's get her.' Lashundia then ran home and spoke to her sister and brother, who then accompanied her to Tineshea's home. At Tineshea's house, Lashundia offered to fight Tineshea but Tineshea refused and Lashundia went home. On her way home, Lashundia ran into her mother and her boyfriend, Orlando Potts. After they conversed, Orlando Potts went to Tineshea's house and broke windows in her house.

Ben Harden testified for the State pursuant to a plea agreement in which first degree murder charges against him were dropped and he received a sentence of 12 years' imprisonment for aggravated discharge of a firearm. According to Harden's testimony, he was in a car with Lemont Lake when Lemont stopped to make a phone call in

_____

[1]Defendant's first name is referred to as "Lamonte" and "Lemont" in different appeals.

response to a page he received on his pager. Harden testified that defendant appeared to be angry when he got back in the car and told Harden that '[t]hey was bogus.' Defendant then drove to Allen Duncan's apartment on 55th and Union Streets. Once inside, defendant told Allen to 'give me that,' at which point Allen retrieved a black, 9 millimeter gun along with a loaded clip and handed it to defendant. Defendant put the loaded clip into the gun.

Defendant, Ben Harden and Allen Duncan left Allen's apartment where, soon thereafter, they saw Jermail Lake and Shon Scott. Defendant told Jermail and Shon, 'They was bogus for doing that.' Defendant, Allen Duncan and Ben Harden then drove to the Lake house at 39th and Prairie, where they met Jermail Lake and Shon Scott, who had driven separately. Rashawn Jackson was sweeping up the glass from the window that Orlando Potts had broken. Harden further testified that Tineshea told defendant that Orlando had broken the windows because she had called him 'out [*sic*] his name.' Harden also testified that Tineshea told the group, which consisted of himself, defendant, Jermail Lake, Shon Scott, and Allen Duncan, that they should go to Orlando's house and 'kick his ass,' but that they should be careful because someone would be there. Defendant then pulled out the 9 millimeter gun and said, 'don't worry about it.'

Defendant, Jermail Lake, Ben Harden, Shon Scott and Allen Duncan left the apartment and walked northbound on Prairie to Lashundia's house. Lashundia lived at 3932 S. Prairie, which is a low-rise housing unit. When they reached a tree about 30 feet away from Orlando's apartment, defendant told the group to stop, pulled the gun out of his jacket and aimed it toward the apartment. As defendant fired the gun he said, 'watch me light this place up.' He fired 16 shots at the apartment. On cross-examination, Harden testified that he could see people in Orlando's apartment before defendant began shooting.

Defendant, Ben Harden and Allen Duncan ran to defendant's car and Allen drove them to defendant's house, where they drank and watched videos. Jermail Lake and Shon Scott arrived 5 to 10 minutes later. Jermail then made a phone call in which Ben heard him say, 'Is everybody straight? Is she O.K.?' Approximately 15 minutes later, the police arrived and arrested everyone.

At trial, Lashundia Davis testified that, at about 6:30 p.m., shortly after Orlando had gone to Tineshea's home to break her windows, she was at home with her mother, siblings, Eric Watkins and her nieces and nephews, including Alvin Gilmore. Eric Watkins looked out the window and said something that caused Lashundia to look out the window. When Lashundia looked out the window she saw defendant, Rashawn Jackson, Kimberly Manning, Tineshea, Jermail Lake and Allen Duncan approaching her apartment from the courtyard directly across from her apartment. Lashundia claimed that the group was within 40 feet of her apartment at one time prior to shooting. Prior to the shooting, 14-year-old Alvin Gilmore was sitting at the kitchen table near a window. Testimony established that he died from a gunshot wound to his brain." *Lake*, 298 Ill. App. 3d at 52-53.

¶ 5       On January 29, 2013, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). In his petition, defendant argued that the trial court failed to admonish defendant that he would be

required to serve a three-year period of MSR following the completion of his prison term and the MSR term was improperly added to his sentence by the Department of Corrections (DOC) in violation of defendant's due process rights. Defendant contended that this rendered his sentence void and asked to be resentenced without the imposition of the three-year MSR term. Defendant's notice of filing indicated that he served the petition on the trial court and the State via the United States mail.

¶ 6 The petition was stamped as received by the clerk's office of the circuit court of Cook County, criminal court division, on January 29, 2013. Thereafter, on February 22, 2013, the trial court stated on the record that defendant had filed a *pro se* section 2-1401 petition. The report of proceedings for February 22, 2013, indicated that an assistant State's Attorney was present in the courtroom at the time of those proceedings and was appearing on behalf of Anita Alvarez, the State's Attorney of Cook County. The court continued the case until March 21, 2013. On March 21, the trial court continued the case until April 4, 2013. On April 4, 2013, the trial court stated on the record that defendant's *pro se* petition under section 2-1401 was denied and a written order was filed. In the six-page written order, the trial court considered the merits of defendant's petition and held that defendant's "term of MSR attached to the sentence which was imposed by the court as an operation of law" and his claim was "without merit."

¶ 7 This appeal followed.

¶ 8 Defendant initially contends the substantive argument from his section 2-1401 petition, that his sentence was void and violated his due process rights because the trial court did not explicitly advise him that he would be required to serve a mandatory three-year period of MSR after his prison sentence. Section 5-8-1(d)(1) of the Unified Code of Corrections states that the term of MSR "shall be written as part of the sentencing order" and for a first degree murder conviction, the term would be three years. 730 ILCS 5/5-8-1(d)(1) (West 2012).

¶ 9 However, the Illinois Supreme Court has recently considered and rejected this argument in *People v. McChriston*, 2014 IL 115310. As in the present case, the defendant in *McChriston* argued that "only the trial court, not the DOC, is empowered to impose a term of MSR, and therefore the addition of the MSR term to defendant's sentence violates the separation of powers clause of the Illinois Constitution and his federal constitutional right to due process." *Id.* ¶ 6. The supreme court held that "[t]he plain language of section 5-8-1(d) at the time of defendant's sentencing was unambiguous and provided that the MSR term be automatically included as part of defendant's sentence and the DOC did not add onto defendant's sentence when it enforced the MSR term." *Id.* ¶ 23. The supreme court observed that "the trial court had no discretionary power in this case" and "the enforcement of the mandatory MSR term in this case was not an increase in sentencing, as the MSR term attached automatically as though written into defendant's sentence." *Id.* ¶ 31.

¶ 10 Under *McChriston*, defendant's claim must fail. Defendant admits that the supreme court rejected his claim, but maintains that the supreme court erred in *McChriston*. However, even if we disagreed with the well-reasoned analysis in *McChriston*, which we do not, "[t]he appellate court lacks authority to overrule decisions of [the supreme] court, which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Therefore, the trial court did not err in dismissing defendant's section 2-1401 petition on the merits.

¶ 11 Defendant next argues that the trial court's dismissal of his section 2-1401 petition was premature because he failed to properly serve the State with the petition. Specifically, defendant asserts that the State was never properly served with his petition because, according

to Supreme Court Rule 105(b), service cannot be made through regular mail. See Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). The State responds that defendant lacks standing to pursue this claim and should not be permitted to reap any appellate benefits as a result of his own admitted error in the trial court, that being improper service.

¶ 12 Section 2-1401 sets forth a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401 (West 2010). Section 2-1401 requires that the petition be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. *Id.* "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)).

¶ 13 Further, the statute provides that petitions must be filed not later than two years after the entry of the order or judgment, but offers an exception to the time limitation for legal disability and duress or if the ground for relief is fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2010). "Petitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002).

¶ 14 "A meritorious defense under section 2-1401 involves errors of fact, not law." *Pinkonsly*, 207 Ill. 2d at 565. A section 2-1401 petition differs from a postconviction petition. "A postconviction petition requires the court to decide whether the defendant's constitutional rights were violated at trial (see 725 ILCS 5/122-1(a) (West 2002)); a section 2-1401 petition, on the other hand, requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment." *Pinkonsly*, 207 Ill. 2d at 566.

¶ 15 Supreme Court Rule 106 provides that notice for the filing of section 2-1401 petitions is governed by Rule 105. Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). Supreme Court Rule 105 provides that notice may be served by either summons, certified or registered mail, or by publication. Ill. S. Ct. R. 105(b) (eff. Jan. 1, 1989). Once notice has been served, the responding party has 30 days to file an answer or otherwise appear. *Id.* "The notice requirements of Rule 105 are designed to prevent a litigant from obtaining new or additional relief without first giving the defaulted party a renewed opportunity to appear and defend." *Albany Bank & Trust Co. N.A. v. Albany Bank & Trust Co. N.A.*, 142 Ill. App. 3d 390, 393 (1986). "The object of process is to notify a party of pending litigation in order to secure his appearance." *Professional Therapy Services, Inc. v. Signature Corp.*, 223 Ill. App. 3d 902, 910 (1992) (citing *Mid-America Federal Savings & Loan Ass'n v. Kosiewicz*, 170 Ill. App. 3d 316, 324 (1988), and *Public Taxi Service, Inc. v. Ayrton*, 15 Ill. App. 3d 706, 712 (1973)). " 'In construing sufficiency of the notice, courts focus not on "whether the notice is formally and technically correct, but whether the object and intent of the law were substantially attained thereby." ' " *Id.* at 910-11 (quoting *In re Marriage of Wilson*, 150 Ill. App. 3d 885, 888 (1986), quoting *Fienhold v. Babcock*, 275 Ill. 282, 289-90 (1916)).

¶ 16 The supreme court in *People v. Vincent*, 226 Ill. 2d 1 (2007), clarified three points for the handling of section 2-1401 petitions in the trial court. The first is that "responsive pleadings are

no more required in section 2-1401 proceedings than they are in any other civil action" and it rejected "the notion that the trial court was prohibited from acting because of the lack of a responsive pleading from the State." *Id.* at 9. "Case law has long recognized that such a judgment, whether it be characterized as a judgment on the pleadings or a dismissal, can be entered by the court notwithstanding the absence of a responsive pleading." *Id.* at 10.

¶ 17 "Section 2-1401 petitions are essentially complaints inviting responsive pleadings." *Id.* at 8. "[I]f the respondent does not answer the petition, this constitutes an admission of all well-pleaded facts [citation], and the trial court may decide the case on the pleadings, affidavits, exhibits and supporting material before it, including the record of the prior proceedings." *Id.* at 9. Thus, the State has no requirement to respond to the filing of a section 2-1401 petition.

¶ 18 Second, the trial court may *sua sponte* dismiss the section 2-1401 petition when the State fails to file a response. *Id.* at 10-12. When the State fails to respond, the petition becomes "ripe for adjudication." *Id.* at 10. "[B]y not responding to the petition, the State caused the trial judge to accept the allegations in the petition as true. What the trial court determined was that those allegations did not provide a legal basis for relief under section 2-1401." *Id.* at 11-12.

¶ 19 Third, the *Vincent* court held that a defendant is not entitled to notice or an opportunity to respond before the trial court *sua sponte* disposes of a section 2-1401 petition. *Id.* at 12-13. The court noted that Illinois cases "recognize that a trial court may, on its own motion, dispose of a matter when it is clear on its face that the requesting party is not entitled to relief as a matter of law." *Id.* at 12.

¶ 20 The supreme court further detailed the procedure in dismissing a section 2-1401 petition in *People v. Laugharn*, 233 Ill. 2d 318 (2009). In *Laugharn*, the defendant was found guilty of first degree murder in 1996. In 2004, she filed a *pro se* section 2-1401 petition alleging that certain evidence had been withheld from her that had bearing on her case. *Id.* at 320-21. The trial court *sua sponte* dismissed the defendant's section 2-1401 petition seven business days after it had been filed as untimely because it had been filed more than two years after the judgment. *Id.* The appellate court affirmed the dismissal, but one justice dissented and expressed concern that the defendant was not afforded notice and opportunity to respond because section 2-1401 provides for several exceptions to toll the two-year period. *Id.* at 321. On appeal, the supreme court first addressed the State's argument that the defendant forfeited the question of timeliness because she did not raise the issue in the appellate court. The court disagreed, noting that the issue of timeliness was before the appellate court. "In fact, there was nothing else before that court to review other than [the defendant's] *pro se* petition and the circuit court's docket entry, which left no doubt that the single ground for the dismissal was the circuit court's determination that the petition was untimely." *Id.* at 322.

¶ 21 The supreme court then turned to issue of the *sua sponte* dismissal and held that the section 2-1401 petition was not ripe for adjudication because the trial court dismissed the petition prior to the expiration of the 30-day period for a response. *Id.* at 323. "The circuit court's dismissal short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Id.* "While *Vincent* allows for *sua sponte* dismissals of section 2-1401 petitions, it did not authorize such action prior to the expiration of the 30-day period." *Id.* (citing *Vincent*, 226 Ill. 2d at 5).

¶ 22 However, neither *Vincent* nor *Laugharn* addressed the question of proper service on the State or considered whether the State may waive improper service by failing to object and

whether the defendant may challenge his own error as a basis for remand. While *Laugharn* quoted Supreme Court Rules 105(a) and 106, the supreme court expressed no opinion on methods of service and the ramifications when a defendant fails to properly serve the State with a copy of a section 2-1401 petition. See *id.* at 323-24.

¶ 23    Here, defendant contends that the 30-day period for the State to respond to his section 2-1401 petition never began because he failed to properly serve his petition on the State. There is no dispute that more than 30 days transpired from when the trial court docketed the petition and the *sua sponte* dismissal on the merits; the petition was docketed February 22, 2013, and dismissed April 4, 2013. We acknowledge that this issue has arisen in numerous appeals across Illinois and has created a division within the districts of the appellate court and within the divisions of the First District. See *People v. Nitz*, 2012 IL App (2d) 091165; *People v. Prado*, 2012 IL App (2d) 110767; *People v. Maiden*, 2013 IL App (2d) 120016; *People v. Carter*, 2014 IL App (1st) 122613, *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014); *People v. Kuhn*, 2014 IL App (3d) 130092. However, this court has previously considered and rejected defendant's argument in *People v. Ocon*, 2014 IL App (1st) 120912. We also note that the previous factual setting in which *Laugharn* was decided seems to have been lost in consideration of the current issue on appeal.

¶ 24    In *Ocon*, the defendant raised an identical argument that this court should vacate the dismissal of his section 2-1401 petition because the 30-day period for a response never began since he failed to properly serve the State with his petition. We first discussed the question of personal jurisdiction in *Ocon*. " '[A] petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint, "thereby seeking to be bound to the court's resolution" thereof.' " *Id.* ¶ 32 (quoting *In re M.W.*, 232 Ill. 2d 408, 426 (2009), quoting *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004)). " 'A respondent or defendant may consent to personal jurisdiction by his appearance, or he may have personal jurisdiction imposed upon him by effective service of summons.' " *Id.* (quoting *M.W.*, 232 Ill. 2d at 426). " 'Once the circuit court acquires personal jurisdiction over a party, it has the power to impose personal obligations on him [citation] and that jurisdiction continues until all issues of fact and law in the case are determined [citation].' " *Id.* (quoting *M.W.*, 232 Ill. 2d at 426). We observed the principle that " 'a party may "object to personal jurisdiction or improper service of process only on behalf of himself or herself." ' " *Id.* ¶ 34 (quoting *In re M.W.*, 232 Ill. 2d 408, 427 (2009), quoting *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29 (1998)). As in *Ocon*, defendant is attempting to challenge the improper service of his petition on the State by using his own error to vacate the dismissal of his petition.

¶ 25    In *Ocon*, we looked to whether the object and intent of notice had been achieved. We held that the State had actual notice of the petition because an assistant State's Attorney appearing on behalf of the Cook County State's Attorney and the respondent for purposes of section 2-1401 was present in open court when the petition was docketed. *Id.* ¶ 35. "As *Vincent* held, the State is not required to respond. The petition was therefore 'ripe for adjudication' when the trial court *sua sponte* entered a written dismissal order after the 30-day period allotted for a response. Once the State appeared before the court, it received actual notice and it could decide whether to file a response." *Id.*

¶ 26    Under *Ocon*, the State in the instant case had actual notice of defendant's section 2-1401 petition when an assistant State's Attorney was present in court on February 22, 2013. It opted not to respond to the motion and the petition was "ripe for adjudication" after the 30-day period

passed. The trial court, therefore, properly dismissed the petition on the merits on April 4, 2013.

¶ 27   Defendant relies on the decisions in *People v. Carter*, 2014 IL App (1st) 122613, *appeal allowed*, No. 117709 (Ill. Sept. 24, 2014), and *People v. Maiden*, 2013 IL App (2d) 120016, to support his argument. In *Carter*, the Second Division found that the 30-day period never began because the record did not establish that an assistant State's Attorney was present in court until the day the trial court dismissed the petition. *Carter*, 2014 IL App (1st) 122613, ¶ 21. The *Carter* court declined to "assume the state had knowledge of the petition and waived service simply because the prosecutor was shown on the cover page of the transcript of the proceedings as 'present' in court at the time the case was called." *Id.*

¶ 28   In *Maiden*, the defendant filed a section 2-1401 petition in April 2011. At a hearing in June 2011, the prosecutor informed the trial court that it never received a copy of the defendant's petition. The court allowed an extension to give the State 30 days to file a response or motion. At the next court date, the prosecutor stated that the State did not intend to file anything in response to the defendant's petition. The trial court then dismissed the petition *sua sponte*. *Id.* ¶¶ 4-5. On appeal, the defendant argued that the trial court erred in dismissing his petition *sua sponte* because it was not properly served and the dismissal was premature. The State responded that it explicitly waived service and the dismissal was timely. *Id.* ¶ 17. The Second District considered section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 2010)), which details the manner in which a party may object to the court's personal jurisdiction, and held section 2-301 required a party to explicitly waive an objection to personal jurisdiction. *Maiden*, 2013 IL App (2d) 120016, ¶ 27.

¶ 29   In *Ocon*, this court disagreed with *Maiden*'s interpretation of section 2-301.

"Section 2-301 is permissive. It provides that a party '*may* object to the court's jurisdiction over the party's person' if it follows the statute. (Emphasis added.) 735 ILCS 5/2-301(a) (West 2010). 'Except in very unusual circumstances affecting the public interest, the legislature's use of the word "may" indicates that the statute is permissive as opposed to mandatory.' *Canel v. Topinka*, 212 Ill. 2d 311, 326 (2004). Section 2-301 does not require a party to object to the court's personal jurisdiction over it, but permits it to do so. The purpose of section 2-301 is to detail the manner in which a party may raise such an objection or risk waiving it. See 735 ILCS 5/2-301 (West 2010). The statute does not require a party to explicitly state, verbally or in writing, that it is choosing not to object. We decline to read any additional requirements into the statute.

Here, the State received actual notice in court of defendant's section 2-1401 petition. The State's presence at the proceedings satisfied the purpose of Rule 106, which is to provide notice to the responding party. The State received such notice through its appearance at the proceedings. The State was permitted to object to improper service under section 2-301, but it chose not to object. Nor did the State respond to the petition, which was also permitted. Once the 30-day period for a response passed, the petition was ripe for adjudication and the trial court was able to dismiss defendant's petition *sua sponte*. The trial court did not err in dismissing defendant's petition." *Ocon*, 2014 IL App (1st) 120912, ¶¶ 40-41.

¶ 30   Recently, the Third District in *People v. Kuhn*, 2014 IL App (3d) 130092, ¶ 17, reviewed this issue and adhered to the holding in *Ocon*, finding that the State had actual notice of the

defendant's section 2-1401 petition. The *Kuhn* court also held that the defendant lacked standing to make an objection as to improper service on behalf of the State. *Id*. ¶ 15.

¶ 31    We continue to follow our decision in *Ocon*. We find that the State had actual notice when an assistant State's Attorney was present in open court when the petition was docketed. The trial court properly dismissed the petition *sua sponte* on the merits more than 30 days later. Further, as in *Ocon*, we point out that defendant's section 2-1401 petition lacks merit under *McChriston*, as we previously discussed, and any remand on this particular petition would be a waste of valuable judicial resources. See *Ocon*, 2014 IL App (1st) 120912, ¶ 2.

¶ 32    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 33    Affirmed.