PROFESSIONAL THERAPY SERVICES, INC., Plaintiff-Appellee, v. SIG-NATURE CORPORATION, d/b/a Aurora Nursing Center, Nursing Center of Canton, Clarytona Manor, Flora Nursing Center, Heights Colonial Manor, Sandhaven Convalescent Center, Hillview Retirement Center, Country Care Manor, Cambridge Court Manor, and Meline Manor, Defendant-Appellant.

Fifth District   No. 5—90—0465

Opinion filed January 29, 1992.

Heyl, Royster, Voelker & Allen, of Edwardsville (William J. Becker, of counsel), for appellant.

P. Michael Read, of Storment & Read, of Belleville, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Signature Corporation, a corporation doing business

as Aurora Nursing Center, Nursing Center of Canton, Clarytona Manor, Flora Nursing Center, Heights Colonial Manor, Sandhaven Convalescent Center, Hillview Retirement Center, Country Care Manor, Cambridge Court Manor, and Meline Manor, appeals from a default judgment of the circuit court of Bond County entered in favor of plaintiff, Professional Therapy Services, Inc. After the default judgment was entered, plaintiff commenced garnishment proceedings to enforce the judgment. This appeal arises out of the trial court's refusal to vacate the default judgment and/or quash the garnishment summons. Defendant raises the following issues: (1) whether the trial court obtained jurisdiction over defendant; (2) in the alternative, if jurisdiction was obtained over defendant, whether the trial court erred in refusing to vacate the default judgment; and (3) whether the trial court erred in awarding attorney fees under section 2—611 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). We affirm.

The evidence reveals that on February 22, 1989, plaintiff filed suit against defendant for breach of contract, seeking $23,037.12 plus reasonable attorney fees, costs, and interest. The summons was made out to: "Gershon Bassman, c/o Signature Corporation, 6253 North Central Park, Chicago, Illinois 60659." A return of service was filed on March 17, 1989. Return of service was on a standardized form which provided three categories of service. The deputy who served the summons was to mark the category under which he had served defendant. The form provided, in pertinent part:

"(A) I CERTIFY THAT I SERVED THIS SUMMONS ON THE DEFENDANT AS FOLLOWS:

..X..1 PERSONAL SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE NAMED DEFENDANT PERSONALLY.

.....2 SUBSTITUTE SERVICE: BY LEAVING A COPY OF THE SUMMONS AND A COPY OF THE COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH SOME PERSON OF THE FAMILY, OF THE AGE OF 13 YEARS OR UPWARDS, AND INFORMING THAT PERSON OF THE CONTENTS THEREOF. ALSO, A COPY OF THE SUMMONS WAS MAILED on the _____ DAY OF _____ 19___ , IN A SEALED ENVELOPE WITH POSTAGE FULLY PREPAID, ADDRESSED TO THE

DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE. SAID PARTY REFUSED NAME _____

.....3 SERVICE ON: CORPORATION _____ BUSINESS _____ PARTNERSHIP _____ BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT (OR INTERROGATORIES) WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT."

In the instant case the deputy who allegedly served the summons marked the first category entitled, "Personal Service." The return stated that Gershon Bassman was served on March 9, 1989, at 8 p.m.

Defendant did not file an answer to the complaint. On October 10, 1989, plaintiff filed a motion for default judgment; the trial court found defendant to be in default on October 12, 1989, and entered judgment against defendant in the amount of $23,037.12 plus $68.80 for court costs and $750 for attorney fees. On October 24, 1989, plaintiff provided the trial court with a copy of the contract between plaintiff and the Flora Nursing Center which stated that the "facility agrees to reimburse therapist for reasonable collection expenses on delinquent accounts, including attorney fees."

On March 15, 1990, plaintiff filed an affidavit for nonwage garnishment on Albank/Albany Bank & Trust Co., NA, to recover the judgment entered in its favor. On March 23, 1990, the garnishment summons was served with return of service filed on April 3, 1990. On April 16, 1990, defendant filed a motion to quash the garnishment summons upon the bank and to bar the court from entering a turnover order. In its motion, defendant argued that the trial court never obtained jurisdiction over defendant. At the same time, defendant filed a motion to vacate judgment asserting that there was no jurisdiction over defendant and that defendant had "good and valid defenses" to the litigation. The affidavit of Gershon Bassman accompanied the motion. In his affidavit, Mr. Bassman swore he was not served with summons on March 9, 1989, at 8 p.m. at 6253 North Central Park Avenue, that such address is the address of his ex-wife, and that he has not lived at that address for approximately 5½ years. He also swore that he had not received a summons or notification of default until he was notified by the bank that he was overdrawn as a result of the garnishment. Mr. Bassman swore that plaintiff never performed any services for defendant and that defendant was not indebted to plaintiff for any amount of money.

On April 23, 1990, plaintiff filed a response to the motion to vacate judgment which incorporated the counteraffidavit of Michael Riley, president of Professional Therapy Services, Inc. In his affidavit, Riley swore that Bassman was aware of the lawsuit as early as February 27, 1989. Riley's knowledge came from a personal conversation with Bassman concerning the lawsuit as well as the amounts owed to plaintiff. A copy of the letter of understanding between Bassman and Riley dated February 27, 1989, was attached to and made part of Riley's affidavit. It reads:

"LETTER OF UNDERSTANDING

February 27, 1989


Signature Corporation
Gershin Bassman
2501 W. Peterson Avenue
Chicago, IL 60659

Re: Therapy Services

Dear Mr. Bassman:

Please take this as a letter of understanding. We received your checks February 27, 1989 totalling $2,840.00. On March 30th we understand we will receive checks totalling $2,064.00 and $2,500.00. On April 30, 1989 we understand we will receive checks totalling $2,193.00 plus an amount of $3,106.20. On May 30, 1989 we understand we will receive checks totalling $4952.42 plus $1,000.00.

If you have any questions, please feel free to call.

Sincerely,


Michael R. Riley
President"

Mr. Riley also swore that on or about March 24, 1989, Bassman called him again. In that conversation, Riley and Bassman talked about the pending lawsuit and a payment schedule. Following that conversation, Bassman penned a follow-up letter to Riley. It, too, was attached to and made part of Riley's affidavit. It read:

"March 24, 1989

Mr. Michael R. Riley, President
Professional Therapy Services, Inc.
Copper Bend Centre
824 South 59th Street
Belleville, IL 62223

Dear Mike:

Per our conversation, please contact your attorney to inform him that we have reached a payment schedule agreement on the outstanding balances, so that he can withdraw the lawsuit. Thanks for your cooperation.

Very truly yours,

/s/ Gershon Bassman

Gershon Bassman
Chairman

GB:kt

cc: P. Michael Read, Attorney at Law
    LaDonna Rosenthal"

Upon receipt of Bassman's letter, plaintiff's attorney sent a letter to Bassman concerning the status of the lawsuit and the payment schedule. That letter was also attached to and made part of Riley's counteraffidavit. It reads:

"March 28, 1989

Mr. Gershon Bassman
Chairman
Signature Corporation
2501 West Peterson Avenue
Chicago, IL 60659

    Re: Professional Therapy Services, Inc. v.
        Signature Corporation

Dear Mr. Bassman:

I have received a copy of your letter dated March 24, 1989, addressed to Michael P. Riley. I also have a copy of a memorialization or an oral agreement wherein Signature Corporation is to pay Professional Therapy Services, Inc. certain amounts pursuant to an oral agreement. Please be advised that I am not authorized to dismiss the law suit. I will give you an extension of time to plead up to and including the date of the last payment which is due and owing. My records show that that last payment should be made on or about May 30, 1989.

Following the receipt of the last payment, I will have my client execute a release and I will forward to you a Stipulation for Dismissal so that the action may be dismissed.

        Very truly yours,


        P. MICHAEL READ

PMR/cmb

cc: Michael R. Riley"

On May 21, 1990, defendant filed a response by Gershon Bassman to the counteraffidavit of Michael Riley. Bassman swore that defendant, Signature Corporation, was not the owner of any nursing homes which received physical therapy services from plaintiff,

that no contracts were signed between plaintiff and defendant, that a contract which had been attached as an exhibit to Riley's counter-affidavit was not a copy of a contract between plaintiff and defendant, that Bassman did have a conversation with Riley in which Bassman had been told that the suit was going to be filed or had been filed and that such suit would be withdrawn if payments were made according to the schedule, that Bassman did know that suit had been filed but did not know the particulars because he had never been served, that payments were made in accordance with the payment schedule which was incorporated into Riley's counter-affidavit as exhibit "A," and that in February it was Bassman's belief that suit would be withdrawn because payments had been made according to the agreement. On that same day, May 21, 1990, the trial court heard arguments by both parties' counsel. Plaintiff's counsel filed the affidavit of the Cook County deputy sheriff who allegedly served the summons in question. The deputy swore that he served a person who identified himself as Gershon Bassman at 8 p.m. on March 9, 1989. After hearing arguments and after considering the file, the trial court denied defendant's motion to vacate judgment, denied defendant's motion to quash the garnishment summons, allowed plaintiff's motion for sanctions pursuant to section 2–611 of the Code, and pursuant thereto awarded $725 to plaintiff's attorney for fees against defendant, Signature Corporation. A stay was ordered pending the outcome on appeal.

On May 22, 1990, defendant filed a notice of appeal. On May 29, 1990, defendant filed a motion to stay enforcement of the judgment pending the outcome of defendant's motion to reconsider and/or request for an evidentiary hearing, which were also filed by defendant on May 29, 1990. Defendant then filed a motion to dismiss the appeal in this court. That motion was granted on June 14, 1990. On June 11, 1990, plaintiff filed a motion to dismiss and/or strike defendant's motion to reconsider and/or request for an evidentiary hearing.

On June 21, 1990, another hearing was held in the trial court. Defendant tendered an affidavit by Miriam Bassman, Gershon Bassman's ex-wife. The trial court heard arguments of counsel but refused to consider either Miriam Bassman's affidavit or the testimony of Gershon Bassman, who was present to testify. Upon reconsideration, the trial court denied defendant's request to vacate judgment or to have an evidentiary hearing.

A motion to stay was approved in part and denied in part, and defendant was given leave to make an offer of proof. Defendant

filed an offer of proof on July 5, 1990. Defendant stated that if given the opportunity, it would have called Gershon Bassman to testify. Bassman would testify that he did not receive the summons and complaint, that he was not at the residence of his ex-wife at 6253 North Central Park on March 9, 1989, that Bassman was and had been a participant in a Thursday night basketball league, and that defendant would call several other participants of the basketball league to testify that he played in such a league and rarely, if ever, missed a Thursday night game. Defendant also stated that it would retender the affidavit of Bassman's ex-wife in which she swore that on March 9, 1990, Gershon Bassman did not reside at 6253 North Central Park Avenue, that a document was left by the Cook County sheriff's department at her residence, and that whatever was left by the sheriff's department would have been delivered to her ex-husband by his children.

On July 23, 1990, defendant again filed a notice of appeal to this court. It is this appeal we now address.

The first issue we are asked to consider is whether the trial court obtained jurisdiction over defendant. Defendant argues, first, that no jurisdiction was obtained over it because Bassman, if served at all, was served as an individual and not as an agent of defendant. Plaintiff responds that Bassman was properly served as the registered agent and/or officer of the corporation and that service upon him binds defendant. Plaintiff contends that the process server's mistake in marking the category entitled "PERSONAL SERVICE" on the return of service is not controlling, but what is controlling is defendant's knowledge of service. We agree with plaintiff.

Section 2—204 of the Code provides:

> "§2—204. Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." Ill. Rev. Stat. 1989, ch. 110, par. 2—204.

The object of process is to notify a party of pending litigation in order to secure his appearance. (*Mid-America Federal Savings & Loan Association v. Kosiewicz* (1988), 170 Ill. App. 3d 316, 324, 524 N.E.2d 663, 668; *Public Taxi Service, Inc. v. Ayrton* (1973), 15 Ill. App. 3d 706, 712, 304 N.E.2d 733, 738.) "In construing suffi-

ciency of the notice, courts focus not on 'whether the notice is formally and technically correct, but whether the object and intent of the law were substantially attained thereby.' " *In re Marriage of Wilson* (1986), 150 Ill. App. 3d 885, 888, 502 N.E.2d 447, 448, quoting *Fienhold v. Babcock* (1916), 275 Ill. 282, 289-90, 113 N.E. 962, 965.

■ Bassman is clearly an agent for defendant. Bassman never disputed his affiliation with defendant and never disputed plaintiff's assertion that he was president of Signature Corporation. Moreover, in a letter to Michael Riley, which was printed on Signature Corporation's stationery, Bassman identified himself as "Chairman" of Signature Corporation. The question remains, however, whether Bassman was served in an individual capacity or as an agent of the corporation.

The caption in the instant case reads: "Professional Therapy Services, Inc., A Corporation, v. Signature Corporation, A Corporation, d/b/a," and thereafter names nine separate nursing homes. The summons in the instant case was made out to: Gershon Bassman, c/o Signature Corporation, 6253 North Central, Chicago, Illinois 60659. After a review of the summons in the instant case, we believe it is clear that defendant is Signature Corporation, not Bassman, and, further, that Bassman is being served in his capacity as agent of the corporation rather than in his individual capacity.

Defendant complains that the return of service clearly shows that the summons was intended to be served by personal service on an individual because the deputy who delivered the summons clearly marked the personal service category provided on the form and failed to connect service on Bassman with the corporation in any way. While one can and should consider the return of service in determining whether proper notice was given (see *State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156; *Mid-America Federal Savings & Loan Association v. Kosiewicz* (1988), 170 Ill. App. 3d 316, 524 N.E.2d 663), we can find no precedent or legislative enactment that would require us to consider only the return of service. We refuse to consider the return of service in a vacuum but instead choose to consider all the information in the record. After a review of such evidence, we agree with the trial court that summons was properly served on Bassman in his capacity as an agent for defendant and, thus, there was no defect in notice to defendant. As a result, the trial court had proper jurisdiction over Signature Corporation.

Defendant analogizes the instant situation to *Leonard v. City of Streator* (1983), 113 Ill. App. 3d 404, 447 N.E.2d 489, and *First State Bank & Trust Co. v. Winfrey* (1987), 165 Ill. App. 3d 767, 520 N.E.2d 763. Neither of these cases is on point. *Leonard* is distinguishable because there the plaintiff's intent and ultimately its actions were to file suit against the individual and to serve him as an individual when in fact there was a mistaken belief that the individual was the correct defendant and the real party in interest was a corporation. (*Leonard*, 113 Ill. App. 3d at 408, 447 N.E.2d at 491-92.) Only after the plaintiff learned of its mistake did the plaintiff attempt to assert that service was actually on the corporation. (113 Ill. App. 3d at 406, 447 N.E.2d at 489-90.) Likewise, *Winfrey* is distinguishable from the instant case because service was never obtained on the corporate defendant, which was found to be an indispensable party. *Winfrey* was a breach of contract complaint against "J.P. Winfrey, Individually and d/b/a Illinois Wrecking Co." (165 Ill. App. 3d at 770, 520 N.E.2d at 765.) Summons was served on J.P. Winfrey through his nephew by substitution. The *Winfrey* court determined that such substitute service was good only as to the individual and not the corporation, and since the corporate defendant was an indispensable party, failure to obtain jurisdiction over the corporate defendant required vacation of the judgment even as to the individual. (165 Ill. App. 3d at 770, 520 N.E.2d at 765.) Both *Leonard* and *Winfrey* are readily distinguishable from the case before us. We are unconvinced by defendant's arguments and find that the trial court had jurisdiction over defendant.

Defendant next contends, in the alternative, that the trial court erred in finding that the evidence sustained a showing of service on Gershon Bassman. We do not agree.

■ In the case of personal service, the law is clear that the sheriff's return of service is *prima facie* proof of service and can be overcome only by clear and convincing evidence, and courts are required to indulge every reasonable presumption in favor of the sheriff's return. *Mid-America Federal Savings & Loan Association v. Kosiewicz* (1988), 170 Ill. App. 3d 316, 524 N.E.2d 663; *Mitchell v. Tatum* (1982), 104 Ill. App. 3d 986, 433 N.E.2d 978.

The evidence here is conflicting. Bassman was adamant that he was not served on the alleged day of service at 6253 North Central Park Avenue and that he had not lived at such an address for $5\frac{1}{2}$ years. The return of service indicated that a deputy served a person who identified himself as Gershon Bassman and that person was a white male approximately 45 years of age. In an affidavit later filed

by plaintiff, the deputy sheriff who delivered the summons swore that he served the papers on a white male 45 years of age who identified himself as Bassman. The trial court heard this evidence and determined that Bassman did not overcome the presumption of proper service. Given the conflicting testimony in this case, the decision rested on the trial court's evaluation of the credibility of the witnesses. (See *Mitchell*, 104 Ill. App. 3d at 988, 433 N.E.2d at 980.) We cannot say that the trial court erred in its determination. Accordingly, we find no error in the trial court's finding that service was obtained on Mr. Bassman.

■ Defendant next contends, in the alternative, that even if defendant did not present enough evidence to overcome the presumption in favor of the sheriff's return, enough evidence was presented that the trial court should have allowed defendant's request for an evidentiary hearing. Plaintiff responds that the trial court properly denied defendant's request for an evidentiary hearing. We agree with plaintiff.

Defendant cites *Newell v. Jackson* (1979), 72 Ill. App. 3d 598, 391 N.E.2d 22, in support of its proposition that the trial court should have conducted an evidentiary hearing. However, nothing in *Newell* convinces us that the trial court erred in denying defendant's request for an evidentiary hearing. In *Newell*, the plaintiff brought an action to recover damages for personal injuries sustained in a fire. The trial court entered a default judgment in favor of the plaintiff, and the defendant filed a special appearance and a petition to vacate judgment alleging she had never been served. The trial court denied the defendant's petition. The defendant later filed a motion supported by affidavits to vacate the trial court's order denying the defendant's petition to vacate. The trial court conducted an evidentiary hearing but ultimately denied the defendant's motion. The *Newell* court reversed the trial court's order, finding that when all the evidence offered by the defendant was considered, the presumption of valid service was overcome by clear and convincing evidence. (*Newell*, 72 Ill. App. 3d at 600, 391 N.E.2d at 24.) *Newell*, however, does not stand for the proposition that the trial court must conduct an evidentiary hearing following the denial of a motion to vacate a default judgment. We believe the trial court was within its discretion to refuse defendant's motion to conduct an evidentiary hearing. The trial court listened to both counsel's arguments on the issue and heard nothing which convinced it that any new evidence would be proffered by defendant.

The next issue we are asked to address is whether the trial court erred in refusing to vacate the default judgment entered against defendant. Defendant argues that the trial court erred in refusing to vacate the judgment because defendant had meritorious defenses which were presented at the May 21, 1990, hearing. Plaintiff replies that defendant did not assert any meritorious defenses, nor did defendant exercise due diligence in presenting any defense to the default judgment, requirements which must be met before a section 2—1401 motion will be granted.

Section 2—1401 of the Code provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated "after 30 days from the entry thereof." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(a).) The requirements which must be met before a section 2—1401 motion will be granted have been set out by our supreme court in *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381:

> "To be entitled to relief under section 2—1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 717[, 471 N.E.2d 221, 224]; *In re Application of County Treasurer* (1983), 114 Ill. App. 3d 921, 923[, 449 N.E.2d 879, 881]; *Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 1065[, 425 N.E.2d 1344, 1347]; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 673[, 360 N.E.2d 1355, 1360]; see Nichols, Illinois Civil Practice sec. 4631, at 140-41 (1981); see generally Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820 (1967).) The quantum of proof necessary to sustain a section 2—1401 petition is a preponderance of the evidence. (*Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 482[, 386 N.E.2d 284, 286]; *David Plywood & Lumber Co. v. Sloan* (1977), 52 Ill. App. 3d 71, 74[, 367 N.E.2d 101, 103]; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 317[, 333 N.E.2d 659, 661].) Whether a section 2—1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented. (*Beno v. DeBoer Asphalt Paving Co.* (1983), 114 Ill. App. 3d 871, 873-74[, 449 N.E.2d 1021, 1024];

*Canton v. Chorbajian* (1980), 88 Ill. App. 3d 1015, 1021[, 410 N.E.2d 1166, 1171]; *Eastman Kodak Co. v. Guasti* (1979), 68 Ill. App. 3d 484, 487[, 386 N.E.2d 291, 293].) As such, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion. *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 751[, 404 N.E.2d 554, 557]; *M.L.C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504, 510[, 375 N.E.2d 560, 565]; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 977[, 313 N.E.2d 684, 687]." 114 Ill. 2d at 220-21, 499 N.E.2d at 1386.

■■ Defendant's two specific arguments in this vein seem to us to be contradictory and unable to stand together. First, defendant argues that it had no contracts with plaintiff, that it did not own any of the nursing homes to which plaintiff supplied services, and that plaintiff did not provide any services to defendant. Second, defendant argues that there was an accord and satisfaction. It is well known "that to constitute an accord and satisfaction there must be an honest dispute between the parties, a tender with the explicit understanding of both parties that it was in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment." (*Hennecke v. Warp* (1952), 347 Ill. App. 425, 430, 107 N.E.2d 185, 187.) Thus, defendant, by arguing accord and satisfaction in the instant case, virtually admits the existence of a contract between the parties. Notwithstanding this almost outright admission, we believe the evidence presented to the trial court is contrary to the arguments made by defendant that it did not owe plaintiff any money for services rendered and that defendant cannot be connected to any contractual obligation to plaintiff.

Plaintiff's complaint alleged that defendant is the owner and operator of several nursing homes and that plaintiff had several contracts with these nursing homes to provide physical therapy services. Defendant denies owning the nursing homes, but its agent, Gershon Bassman, admitted that Signature Corporation is the management company of the various nursing homes listed by plaintiff in its caption of the case. Moreover, defendant's chairman, Gershon Bassman, wrote a letter to the president of plaintiff corporation, Michael Riley, dated March 24, 1989, in which Bassman asked Riley to notify Riley's attorney that a payment schedule had been reached and to recommend that the lawsuit be dismissed. Thereby, Bassman acknowledged the lawsuit had been filed and acknowledged defendant owed money to plaintiff for services plaintiff rendered to

defendant. In "exhibit A" attached to Michael Riley's counteraffidavit, a letter written by Riley to Bassman, c/o Signature Corporation, Riley confirmed payments made by defendant to plaintiff from several nursing homes, most of which were listed in the complaint's caption. The record is replete with evidence that defendant was doing business with plaintiff, that defendant owed plaintiff money for services rendered, and that defendant knew it owed plaintiff such money. Plaintiff's complaint stated a cause of action which defendant all but ignored. Defendant must now suffer the consequences of its inertia.

Defendant next contends that it has a meritorious defense in the nature of an accord and satisfaction. An accord is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to the amount due. (*Quaintance Associates, Inc. v. P L M, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567.) Satisfaction is the execution or carrying into effect of an accord. (Black's Law Dictionary at 1342 (6th ed. 1990).) The following are the requirements of an accord and satisfaction: (1) a *bona fide* dispute; (2) an unliquidated sum; (3) consideration; and (4) a shared and mutual intent to compromise the claim. (*Grove v. Winter* (1990), 197 Ill. App. 3d 406, 413, 554 N.E.2d 722, 726.) Here, defendant has not convinced us that it has met any of the requirements of an accord and satisfaction.

We have concluded that the parties agreed money was owed to plaintiff; however, defendant, through Bassman, has contended that it owed no money to plaintiff. The letters between the presidents of the two corporations involved in this litigation agreed upon a payment schedule, but nothing in the record indicates what amount was agreed upon as due and owing. Defendant has not given us any indication what the consideration for this accord may have been. Finally, defendant has not shown us that there was any shared intent to compromise this claim. Because the record is devoid of an amount agreed upon by the parties as due and owing, there is no way to determine if this amount was compromised and if plaintiff agreed to a lesser amount.

The facts indicate that defendant had notice and opportunity to avoid the default judgment by filing an answer or appearance. Instead, defendant, through Bassman, worked out a payment schedule, which according to plaintiff was never completed. " 'Relief under section [2—1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be ob-

tained through other procedures or at a cheaper cost.' " (*Smith v. Airoom, Inc.*, 114 Ill. 2d at 224, 499 N.E.2d at 1388, quoting *Abbell v. Munfield* (1979), 76 Ill. App. 3d 384, 388, 395 N.E.2d 78, 81.) We are unconvinced by defendant's arguments that it had a meritorious defense to this litigation. Accordingly, we find no error in the trial court's refusal to vacate the default judgment.

The final issue we are asked to consider is whether the trial court erred in awarding attorney fees under section 2—611 of the Code. Basically, defendant argues that it does not make sense that the trial court awarded attorney fees pursuant to section 2—611 of the Code after the first hearing on May 21, 1990, and then denied plaintiff's request for attorney fees pursuant to section 2—611 of the Code subsequent to the June 21, 1990, hearing on defendant's motion to reconsider. Plaintiff replies that in the totality of the evidence before the court on the May 21, 1990, hearing, the trial court was within its discretion to award attorney fees. We agree.

Section 2—611 of the Code, which provides for attorney fees and costs to be paid by the party opponent, states in pertinent part:

> "If a pleading, motion, or other paper is signed in violation of this Section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Ill. Rev. Stat. 1989, ch. 110, par. 2—611.

Section 2—611 "contains a general grant of power to impose sanctions in a wide variety of situations in which the judicial process is being subverted, and its general application has made it much used." (Ill. Ann. Stat., ch. 110, par. 2—611, Historical and Practice Notes, at 265 (Smith-Hurd 1983).) Whether to award attorney fees lies within the sound discretion of the trial court, and absent an abuse of such discretion, an award of attorney fees pursuant to section 2—611 will not be disturbed. *Fried v. Barad* (1989), 187 Ill. App. 3d 1024, 1027, 543 N.E.2d 1018, 1020.

■ In the instant case, the trial court did not give any specific reasons for the allowance of attorney fees after the May 21, 1990, hearing nor any reasons for the denial of attorney fees after the June 21, 1990, hearing. However, a review of the record supports the trial court's award. Initially, defendant, through Bassman's affidavit, denied owing any money to plaintiff for services rendered,

but later admitted that it had set up a payment schedule with plaintiff in the hopes that the litigation would be dismissed. Obviously, defendant knew about the pending litigation but waited until its bank account was garnished before participating in the judicial process. We believe that it is just this type of situation that section 2—611 seeks to redress by allowing attorney fees.

The fact that the trial court did not award attorney fees after the June 21, 1990, hearing does not mean that the trial court abused its discretion by awarding the $725 in fees after the first hearing. In our estimation, the trial court refused to punish defendant for asking the trial court to reconsider its decision. We decline to say that the allowance of attorney fees after one hearing, but not after a second hearing where no new evidence is presented, is as a matter of law an abuse of discretion. Therefore, we find that the trial court did not err in awarding attorney fees under section 2—611.

For the foregoing reasons, the judgment of the circuit court of Bond County is affirmed.

Affirmed.

RARICK and CHAPMAN, JJ., concur.