# Illinois Official Reports

## Appellate Court

---

*MI Management, LLC v. Proteus Holdings, LLC*, 2018 IL App (1st) 160972

---

| | |
|---|---|
| Appellate Court Caption | MI MANAGEMENT, LLC, Plaintiff-Appellant, v. PROTEUS HOLDINGS, LLC, TODD BRYANT, and FRANK TALBERT, Defendants (PHDS Acquisitions, LLC, Intervenor-Appellee; Proteus Group, Citation Respondent-Appellee). |
| District & No. | First District, Third Division<br>Docket Nos. 1-16-0972, 1-16-1120 cons. |
| Filed | September 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-14036; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | No. 1-16-0972, Judgment vacated and cause remanded with instructions.<br>No. 1-16-1120, Judgment reversed in part and vacated in part; cause remanded with instructions. |
| Counsel on Appeal | Francis X. Buckley Jr., J. David Duffy, James L. Oakley, and Patrick Morales-Doyle, of Thompson Coburn LLP, of Chicago, for appellant.<br><br>Jordan A. Finfer, of DiMonte & Lizak, of Park Ridge, for appellees. |

JUSTICE ELLIS delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1 In Illinois, proceedings to enforce judgments are strictly regimented by a series of statutes drafted by the General Assembly, with a view that the postjudgment collection process be "swift, cheap, [and] informal." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). But do not tell that to our appellant, MI Management, LLC (MI). MI obtained a money judgment against Frank Talbert, Todd Bryant, and their company, Proteus Holdings, LLC (Proteus Holdings)—and, four years down the road, is still trying to collect its money.

¶ 2 Among other things, MI obtained four enforceable garnishment judgments against a related company named Proteus Group—wage and nonwage garnishment judgments regarding both Talbert and Bryant. MI also laid claim to money held in a Proteus Group bank account with Urban Partnership Bank. But another entity, PHDS Acquisitions, LLC (PHDS), filed an adverse claim over that deposit account, claiming a perfected security interest in the money held with Urban Partnership Bank.

¶ 3 The circuit court ruled in favor of PHDS on the adverse claim. MI appeals that ruling. That ruling is the subject of appeal No. 1-16-0972.

¶ 4 Later, however—that is, more than 30 days after the garnishment judgments were entered—Proteus Group moved to quash all of the garnishment summonses, claiming lack of personal jurisdiction because service was improper. The circuit court agreed with Proteus Group and quashed the summonses. MI appeals that ruling, too, in appeal No. 1-16-1120.

¶ 5 In our view, although the garnishment summonses MI served upon Proteus Group contained technical defects, those errors were not so serious as to preclude the circuit court from acquiring personal jurisdiction over Proteus Group. We reverse that ruling and remand for further proceedings.

¶ 6 As for the ruling in favor of PHDS on the adverse claim, we vacate that ruling because the circuit court did not have subject-matter jurisdiction over that matter when it entered the order. We remand the cause with instructions to dismiss the adverse claim for lack of subject-matter jurisdiction.

¶ 7                                BACKGROUND
¶ 8 This case began in December 2011, when MI sued Proteus Holdings, Bryant, and Talbert for breach of a $1.25 million promissory note. In August 2014, the circuit court entered a final judgment in favor of MI and against (1) Proteus Holdings for $1,317,140.78, (2) Bryant for $526,856.31, and (3) Talbert for $790,284.47. In November 2014, the court entered an order in favor of MI and against Bryant, Talbert, and Proteus Holdings, awarding MI $109,088.46 in attorney fees.

¶ 9 With that, MI assumed the role of judgment creditor, and Proteus Holdings, Talbert, and Bryant became judgment debtors. MI instituted supplementary proceedings under section

2-1402 of the Code of Civil Procedure (Code) to discover the judgment debtors' assets and collect its judgment. See 735 ILCS 5/2-1402 (West 2014).

¶ 10    As part of those proceedings, MI caused the clerk of the circuit court to issue a citation to discover assets to third party Proteus Group, which MI served on Proteus Group via special process server on December 5, 2014. The basis for the third-party citation to Proteus Group was MI's claim that Bryant and Talbert were "the managers of Proteus Group" and that Talbert and Proteus Holdings collectively owned 79% of Proteus Group.

¶ 11    On January 7, 2015, MI filed an application for issuance of a charging order against Talbert's and Bryant's distributional interests in Proteus Group.

¶ 12    Pursuant to the sections of the Code dealing with garnishments (*id.* § 12-701 *et seq.*) and wage deductions (*id.* § 12-801 *et seq.*), MI then sought to issue wage and nonwage garnishment summonses to Proteus Group for the Bryant judgment and for the Talbert judgment.

¶ 13    The Bryant garnishment summonses were served on Proteus Group by special process server on February 20, 2015. On March 9, when Proteus Group failed to appear or respond, the circuit court entered conditional garnishment judgment orders against Proteus Group as to Bryant. On March 25, MI served Proteus Group by special process server with summonses for the Bryant conditional garnishment judgment orders.

¶ 14    The Talbert garnishment summonses were served on Proteus Group on March 19, 2015. On March 30, after Proteus Group again failed to appear or respond, the circuit court entered conditional garnishment judgment orders against Proteus Group as to Talbert. MI served Proteus Group by special process server with summonses for the Talbert conditional garnishment judgment orders on June 4, 2015.

¶ 15    On March 4, 2015, the court entered a charging order in favor of MI and against Proteus Holdings' distributional interests in Proteus Group. The order appointed Alex Moglia as receiver of any distributions from Proteus Group that became due and owing to Proteus Holdings. The order (1) stated that Moglia was "empowered and directed to make all inquiries of Proteus Holdings and third parties about the income and assets of Proteus Holdings and any transfers or distributions from Proteus Group at their direction" and (2) directed Proteus Holdings to "cooperate with [Moglia]" by making available to Moglia its financial records "for the period beginning January 1, 2009."

¶ 16    In April 2015, Moglia filed a report with the circuit court explaining that he asked Proteus Group to provide him with financial information for January 1, 2009, to the present. The batch of documents Proteus Group tendered in response to Moglia's request was smaller than Moglia anticipated, so he conducted a conference call with Proteus Group's attorney, Stewart Kusper. According to Moglia, during the call, Kusper (1) stated that he instructed Talbert to refrain from tendering any financial information or documents prior to 2012, (2) stated that Moglia was not auditing Proteus Holdings and thus was not entitled to information prior to 2012, and (3) questioned "what right" Moglia had to information dating to before 2012.

¶ 17    On May 11, the court issued a rule to show cause against Proteus Group to demonstrate why it should not be held in civil contempt for violating the charging order. On May 27, the parties appeared for a hearing on the rule to show cause. The same day, the court entered an order stating that "Proteus Group appear[ed] by and through its counsel to contest the Court's

jurisdiction over it to enter a Rule to show cause." The court granted Proteus Group leave to file "any responsive pleading to the Rule to Show Cause" by June 10, 2015, and scheduled a hearing on the rule to show cause for July 7, 2015.

¶ 18     The June 10 deadline came and passed, and Proteus Group never filed anything.

¶ 19     On June 24, the court entered an order following a status conference regarding the Bryant and Talbert conditional judgment orders. The order stated Proteus Group had not "answered or appeared to date."

¶ 20     On June 30, 2015, MI filed a motion to confirm the Bryant and Talbert conditional judgment orders against Proteus Group. On July 6, 2015, the court granted the motion and entered four judgment orders against Proteus Group. Each order stated, in relevant part, that (1) MI issued garnishments to Proteus Group for the Bryant and Talbert judgments, (2) Proteus Group "failed to appear and answer the Garnishment," resulting in the entry of a conditional judgment, and (3) Proteus Group was served "as provided by 735 ILCS 5/12-706 and PROTEUS GROUP, LLC again failed to appear and answer."

¶ 21     On August 6, 2015, MI issued fresh citations to discover assets to Proteus Group based on the garnishment judgments, as well as third-party citations to Urban Partnership Bank. On August 13, 2015, Urban Partnership Bank disclosed that it was holding funds in a bank account owned by Proteus Group.

¶ 22     On August 26, Proteus Group filed an emergency motion to quash service of the garnishment summonses. That motion alleged three defects in MI's service of the garnishment summonses: (1) MI failed to file a signed and notarized affidavit as required by the Code, (2) the summonses did not contain a signed certification of the judgment against Talbert, and (3) MI failed to obtain a lawful appointment of the special process server who served the summonses on Proteus Group. (The first two arguments are raised on appeal; the third is not.)

¶ 23     On September 4, 2015, PHDS intervened in the supplementary proceeding and filed an adverse claim as to all of Proteus Group's assets, including (relevant to this appeal) the funds in Proteus Group's Urban Partnership Bank account. PHDS alleged that (1) in 2004, Proteus Group executed a promissory note in favor of Amerimark Bank, (2) Amerimark perfected a security interest in the note by filing a Uniform Commercial Code (UCC) financing statement with the Illinois Secretary of State, (3) Amerimark then merged with Inland Bank and Trust, and (4) PHDS then purchased Proteus Group's debt from Inland.

¶ 24     On September 30, 2015, the court granted Proteus Group's emergency motion to quash. The same day, the court entered orders vacating citation proceedings that MI had initiated against 15 third-party citation respondents—including, relevant to this appeal, Urban Partnership Bank. Those orders were entered pursuant to a series of emergency *ex parte* motions that Proteus Group filed after the court granted Proteus Group's emergency motion to quash service of the garnishment summons. Although the order granting Proteus Group's emergency motion to quash did not so specify, the September 30 orders vacating the citation proceedings against the third-party citation respondents stated that the court had vacated the July 6, 2015, garnishment judgments against Proteus Group. On October 9, 2015, MI filed a motion to reconsider, which the court denied on March 16, 2016.

¶ 25     On November 5, 2015, the circuit court granted PHDS's adverse claim. MI filed a motion to reconsider that order, which the court denied on March 3, 2016.

- 4 -

¶ 26    On April 5, 2016, MI filed a notice of appeal with respect to the order allowing PHDS's adverse claim. That appeal was docketed in this court as appeal No. 1-16-0972. On April 13, 2016, MI filed a notice of appeal with respect to, among other things, (1) the September 30, 2015, order granting Proteus Group's emergency motion to quash, (2) the September 30, 2015, orders granting Proteus Group's emergency motion to vacate the citation proceedings as to the third-party citation respondents, and (3) the March 16, 2016, order denying MI's motion to reconsider the September 30, 2015, order granting Proteus Group's emergency motion to quash. That appeal was docketed in this court as case No. 1-16-1120. We consolidated the appeals for disposition.

¶ 27                                ANALYSIS
¶ 28                          I. Appeal No. 1-16-1120
¶ 29    Because it is potentially dispositive of both appeals presently before us, we first consider MI's appeal in case No. 1-16-1120, which pertains to the court's order granting Proteus Group's emergency motion to quash service of the garnishment summonses.

¶ 30                      A. Subject-Matter Jurisdiction
¶ 31    Before we turn to the merits, we must address a challenge to our subject-matter jurisdiction. Proteus Group maintains that the order granting its motion to quash was not a final order because it did not terminate the proceeding. According to Proteus Group, "[a]fter the entry of the quashing order, there was nothing to stop MI from issuing appropriately constituted and worded garnishment summonses against Proteus Group." In a sense, Proteus Group is correct: After the circuit court quashed the summonses, MI *could* have simply reissued proper summonses and caused them to be served on Proteus Group. But that is ultimately irrelevant.

¶ 32    In the present case, Proteus Group filed its emergency motion to quash more than 30 days after the circuit court entered the garnishment judgments against it. It is well established that "a motion to vacate a void judgment for lack of service that is filed more than 30 days after the judgment was entered is properly designated a section 2-1401 petition." *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 715 (2010); see *Pickens v. Aahmes Temple #132, LLC*, 2018 IL App (5th) 170226, ¶ 33 (citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002)); 735 ILCS 5/2-1401 (West 2014). And it is equally well settled that an order "granting or denying any of the relief prayed in a petition under section 2-1401 of the Code" is final and appealable. Ill. S. Ct. R. 304(b)(3) (eff. Mar. 1, 2016); *Sarkissian*, 201 Ill. 2d 95 at 105.

¶ 33    The fact that MI filed a motion to reconsider before filing its notice of appeal is immaterial. Pursuant to Illinois Supreme Court Rule 303, the time to take an appeal is tolled when a party files a postjudgment motion such as a motion to reconsider. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). In *Elg v. Whittington*, 119 Ill. 2d 344, 355 (1987), the Illinois Supreme Court held that "the timing of a Rule 304(b)(3) appeal is to be governed by Rule 303(a)(1), *including its provision for a toll following a post-trial motion*." (Emphasis added.) We thus find that we have appellate jurisdiction.

¶ 34                                B. Personal Jurisdiction

¶ 35          Assured that we have *subject-matter* jurisdiction, we turn to the merits of MI's appeal, which requires us to determine whether the circuit court had *personal* jurisdiction over Proteus Group. As we stated, we must analyze Proteus Group's emergency motion to quash as a section 2-1401 petition because Proteus Group's emergency motion to quash was filed more than 30 days after the circuit court entered the garnishment judgments against Proteus Group. *Protein Partners*, 407 Ill. App. 3d at 715. A section 2-1401 petition may be used to attack a void judgment. A judgment is void if the court that entered it lacked personal jurisdiction over the parties. *Sarkissian*, 201 Ill. 2d at 103; see *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986) ("A judgment rendered without service of process, either by summons or by publication and mailing, where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings."). "We review *de novo* a judgment entered on a section 2-1401 petition that is requesting relief based on the allegation that the judgment is void." *Pekin Insurance Co. v. Rada Development, LLC*, 2014 IL App (1st) 133947, ¶ 19.

¶ 36          Personal jurisdiction refers to the circuit court's power to exercise adjudicatory authority over particular individuals. *In re L.E.J.*, 115 Ill. App. 3d 993, 997 (1983). "In order for a court to have personal jurisdiction over a party, three elements must be established: (1) proper service of process, (2) jurisdiction under the Illinois long-arm statute [citation], and (3) due process under both the United States and Illinois Constitutions." *McNally v. Morrison*, 408 Ill. App. 3d 248, 254-55 (2011). This case only implicates the service requirement.

¶ 37          Initially, we reject MI's argument that Proteus Group forfeited this argument by failing to raise it in the circuit court. To be sure, Proteus Group did fail—after obtaining leave of court, no less—to file a written objection to the court's personal jurisdiction over it. But the court order that granted Proteus Group leave to file an objection stated that Proteus "appear[ed] by and through its counsel to contest the Court's jurisdiction over it to enter a Rule to show cause." And in any event, Proteus Group did raise this issue in the circuit court by filing a section 2-1401 petition—the very ruling before us. So MI's forfeiture argument fails.

¶ 38          The forfeiture argument aside, we consider the merits of the personal-jurisdiction argument raised by Proteus Group. Proteus Group argues that summonses that MI purported to serve pursuant to the Garnishment Act were fatally defective because MI did not sign and notarize the affidavit for nonwage garnishment, as required by section 12-701 of the Code. See 735 ILCS 5/12-701 (West 2014). Proteus Group also argues that one of the nonwage garnishments—the one issued for Bryant—was fatally defective because MI failed to sign the "certificate of attorney or non-attorney" regarding the amount of the judgment at issue.

¶ 39          We agree with MI that the deficiencies identified are technical, nonsubstantive defects that did not deprive the circuit court of personal jurisdiction over Proteus Group. It is well established that, when " 'construing sufficiency of notice, courts focus not on "whether the notice is formally and technically correct, but whether the object and intent of the law were substantially attained thereby." ' " *Professional Therapy Services, Inc. v. Signature Corp.*, 223 Ill. App. 3d 902, 910-11 (1992) (quoting *In re Marriage of Wilson*, 150 Ill. App. 3d 885, 888 (1986), quoting *Fienhold v. Babcock*, 275 Ill. 282, 289-90 (1916)). The purpose of a summons is to "notify a party that an action has been commenced against him." *In re Application of the County Treasurer & ex officio County Collector*, 307 Ill. App. 3d 350, 355

(1999). In determining whether a summons was sufficient to provide the opposing party with notice of the action, "we adhere to the principle that a court should not elevate form over substance, but should construe a summons liberally." *Id.*

¶ 40    For example, in *Application of County Treasurer*, this court found that a tax summons was sufficient to confer personal jurisdiction, despite the fact that the sheriff did not endorse the summons as required by state law. We explained that, technical defects notwithstanding, the summons was valid because it "served its intended purpose—to notify [the respondent]" that his property was being sold. *Id.* Similarly, in *Charter Bank & Trust of Illinois v. Novak*, 218 Ill. App. 3d 548, 553 (1991), this court held that a summons, minor defects notwithstanding, "adequately advised the defendant of what she needed to do in order to appear and defend" and thus the defects were "no barrier to personal jurisdiction over the defendant."

¶ 41    For its claim that the failure to serve a signed and notarized affidavit of garnishment precluded the circuit court from exercising personal jurisdiction, Proteus Group relies on *Rogers v. Pierce*, 214 Ill. App. 178 (1919), and *Dale Jewelers, Inc. v. Walker*, 44 Ill. App. 2d 224 (1963).

¶ 42    We begin by noting that "[a]ppellate court decisions issued prior to 1935 had no binding authority." *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996). *Rogers* was issued in 1919, so we are not bound by it. But even if *Rogers* were binding, neither that decision nor *Dale Jewelers* would mandate the outcome Proteus Group suggests.

¶ 43    In *Rogers*, the court stated, in relevant part:

> "Garnishment proceedings are purely statutory and only by a strict compliance with the terms of the statute governing such proceedings can a justice of the peace acquire jurisdiction to issue a garnishee summons or to hear and determine a garnishee case. [Citations.]
>
> To give a court jurisdiction in a garnishment proceeding, an affidavit must be filed pursuant to [the garnishment statute] [citation].
>
> As there was no such affidavit filed in this case as is required by [the garnishment statute], *the justice* had no jurisdiction to proceed and properly dismissed the proceedings. The City Court of Pana, hearing the case on appeal, had no jurisdiction the justice of the peace did not have. The judgment appealed from was void for want of jurisdiction and is therefore reversed." (Emphasis added.) 214 Ill. App. at 180-81.

Likewise, in *Dale Jewelers*, the court stated that there was "no dispute that such an affidavit is a jurisdictional requisite and that a void judgment may be vacated at any time." *Dale Jewelers*, 44 Ill. App. 2d at 226.

¶ 44    The flaw in relying on these cases is that they did not concern the question of personal jurisdiction at all. They were discussing *subject-matter* jurisdiction, decided as they were in an era when the legislature could impose subject-matter jurisdictional limits on the courts in a way it no longer can.

¶ 45    *Rogers* and *Dale Jewelers* were decided in 1919 and 1963, respectively, when the Illinois Constitution of 1870 was still in effect. Under the 1870 Constitution, the General Assembly was empowered not only to create statutory causes of action but also to impose limits on the court's power to hear them—that is, subject-matter jurisdictional limits. As the Illinois

Supreme Court explained in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 336-37 (2002):

> "Under our former constitution, adopted in 1870, the circuit court enjoyed 'original jurisdiction of all causes in law and equity.' Ill. Const. 1870, art. VI, § 12. The court's jurisdiction over special statutory proceedings, *i.e.*, matters which had no roots at common law or in equity, derived from the legislature. [Citations.] *Thus, in cases involving purely statutory causes of action, we held that unless the statutory requirements were satisfied, a court lacked jurisdiction to grant the relief requested*." (Emphasis added.)

¶ 46    It was not until 1964 that the judicial article of the 1870 Constitution was amended to confer upon the circuit court "original jurisdiction of all justiciable matters," giving courts subject-matter jurisdiction over even statutory causes of actions (with the exception of administrative review). Ill. Const. 1870, art. VI (amended 1964), § 9; *Belleville Toyota*, 199 Ill. 2d at 337. So as of 1964, the legislature can no longer prescribe the subject-matter jurisdiction of courts over statutory causes of action, such as garnishment proceedings.

¶ 47    But *Rogers* and *Dale Jewelers*, of course, were decided well before 1964. Under the 1870 Constitution that governed at the time *Rogers* and *Dale Jewelers* were decided, the failure on the part of the garnishor to comply with the requirements of the garnishment statute would have defeated not the circuit court's *personal* jurisdiction over the *parties* but rather its *subject-matter* jurisdiction over the garnishment action itself. To paraphrase our supreme court, those courts would have "lacked jurisdiction to grant the relief requested" because "the statutory requirements were [not] satisfied." *Belleville Toyota*, 199 Ill. 2d at 337.

¶ 48    Indeed, the two cases on which the 1919 decision in *Rogers* relied for the proposition that the absence of an affidavit is a "jurisdictional" requirement under the Garnishment Act both made it clear that they were referring to *subject-matter* jurisdiction. In *Garrett v. Murphy*, 102 Ill. App. 65, 66 (1902), this court more specifically held that an affidavit was required in a garnishment proceeding "[i]n order to give the justice *jurisdiction of the subject-matter*" (emphasis added), because the court's subject-matter jurisdiction was limited by the terms of the statute.

¶ 49    Still more to the point, the other case on which *Rogers* relied, *Gibbon v. Bryan*, 3 Ill. App. 298, 301 (1878), discussed the requirements of the 1874 garnishment statute that, before a plaintiff could issue a garnishment summons on a defendant, two things had to occur: (1) a return of execution of the judgment showing the defendant had no property or goods on which to levy the judgment and (2) an affidavit filed by the plaintiff attesting to the same. "These two things," said the court, "must be done in order to give the court *jurisdiction of the subject-matter* of the suit." (Emphasis added.) *Id.* Once those two things were accomplished, the court explained, the plaintiff could issue and serve the garnishment summons, which related to *personal* jurisdiction: "The issue and service of the summons gives *jurisdiction of the person* or party defendant." (Emphasis added.) *Id. Gibbon*, then, more clearly than *Rogers* or *Dale Jewelers*, explains the distinction between subject-matter jurisdiction and personal jurisdiction in statutory causes of action arising under the pre-1964 judicial article of the Illinois Constitution. *Gibbons*, and by extension its progeny—namely, *Rogers* and *Dale Jewelers*—merely stand for the proposition that in statutory claims arising when the 1870 Constitution still governed, technical defects in the affidavit may negate the court's

*subject-matter* jurisdiction over the case but not the court's personal jurisdiction over the parties.

¶ 50     Thus, *Rogers* and *Dale Jewelers* do not even address the question of personal jurisdiction and do not advance Proteus Group's argument that the defects in the affidavit here defeated personal jurisdiction.

¶ 51     In support of its claim that the Bryant nonwage garnishment summons was fatally defective because MI failed to sign the "certificate of attorney or non-attorney" regarding the amount of the judgment at issue, Proteus Group cites only a single case, *Cohen v. North Avenue State Bank*, 304 Ill. App. 413, 417 (1940), for the proposition that "every case must be brought within the scope of [the] statute, and whatever the case may be, 'the words of the statute must control.' " Proteus Group is correct insofar as the *Cohen* opinion does contain the phrase, "the words of the statute must control." See *id.*

¶ 52     But *Cohen* is inapposite for the same reason as *Rogers* and *Dale Jewelers*: it was decided before the judicial article of the Illinois Constitution was amended and thus reflects an analysis of the court's *subject-matter* jurisdiction, not personal jurisdiction. What's more, the word "jurisdiction" does not even appear in *Cohen*, so it is largely unhelpful to Proteus Group's argument.

¶ 53     Proteus Group is surely correct that "strict compliance with the statutes governing the service of process is required before a court will acquire personal jurisdiction over the person served." *West Suburban Bank v. Advantage Financial Partners, LLC*, 2014 IL App (2d) 131146, ¶ 20 (citing *Sarkissian*, 201 Ill. 2d at 109). But the certificate requirement is contained in the garnishment statute—specifically, in section 12-705 of the Code—and section 12-705 is not a statute "governing the service of process." *Id.* Indeed, the garnishment statute explicitly provides that its provisions do *not* govern service of process. See 735 ILCS 5/12-705(d) (West 2014) ("The garnishment summons may be served and returned in the manner provided by Supreme Court Rule for service ***.") The Illinois Supreme Court Rules, as well as part 2 of article II of the Code—tellingly entitled "Process"—govern service of process. See *id.* §§ 2-201 to 2-203.1.

¶ 54     Thus, to determine whether the technical defects in the garnishment summonses were so severe as to preclude the court from obtaining personal jurisdiction over Proteus Group, we must place substance over form and ask whether the garnishment summonses adequately notified Proteus Group that an action had been commenced against it. *Application of County Treasurer*, 307 Ill. App. 3d at 355; *Novak*, 218 Ill. App. 3d at 553; *Professional Therapy Services*, 223 Ill. App. 3d at 910-11; *Marriage of Wilson*, 150 Ill. App. 3d at 888.

¶ 55     We find that the summonses served that function. At the outset, we note that Proteus Group has not even explained how any of these defects frustrated its ability to understand that MI had instituted garnishment proceedings against it or what it needed to do to prepare and defend itself. Indeed, it is difficult to imagine how a blank signature line or the lack of a notary stamp—to be sure, both facial defects—could have possibly prevented Proteus Group from understanding the meaning or significance of the summonses. We are unable to find that the technical deficiencies in the garnishment summonses defeated personal jurisdiction over Proteus Group. The circuit court's ruling to the contrary was in error.

¶ 56     The defects in this case stand in stark contrast to those, for example, in *R&J Construction Supply Co. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 3, where R&J Construction Supply Company obtained a money judgment against Gregory Adamusik and then issued a

third-party citation to discover assets to Edmar Corporation (Edmar) to recover any money that Edmar owed to Adamusik. There, the citation form listed the wrong debtor and, in effect, asked for the assets of the third-party respondent, not the debtor. *Id.* ¶ 17. And Edmar established to the circuit court's (and our) satisfaction that the citation was confusing, not only because of this mistake, but because Edmar held none of the debtor's assets, nor did it have any relationship with the debtor; in fact, Edmar's officer had never even heard of the debtor. *Id.* Equitable principles, not jurisdictional ones, compelled our conclusion that the circuit court properly granted Edmar's section 2-1401 petition. *Id.* ¶ 21. Nothing in our decision should prevent a circuit court from doing justice when a third party has failed to respond to a "deceptive and defective" summons or citation, or when the evidence shows that the third-party respondent has no relationship to the debtor or holds none of the debtor's assets. *Id.*

¶ 57    We reverse the judgment of the circuit court granting Proteus Group's emergency motion to quash, reverse the court's order insofar as it vacated the garnishment judgments against Proteus Group, and remand the case to the circuit court with instructions to reinstate the garnishment judgments against Proteus Group.

¶ 58                                  II. Appeal No. 1-16-0972

¶ 59    We next consider MI's appeal in case No. 1-16-0972, pertaining to the court's order granting PHDS's adverse claim against Proteus Group's assets. The circuit court ruled that PHDS had a perfected security interest in the money held in Proteus Group's deposit account with Urban Partnership Bank.

¶ 60    Before we reach the merits, we must consider whether the circuit court had subject-matter jurisdiction to rule on PHDS's claim. See *Belleville Toyota*, 199 Ill. 2d at 334 ("[T]his court has an obligation to take notice of matters which go to the jurisdiction of the circuit court."). Subject-matter jurisdiction refers to " 'a court's power "to hear and determine cases of the general class to which the proceeding in question belongs." ' " *In re Luis R.*, 239 Ill. 2d 295, 300 (2010) (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009), quoting *Belleville Toyota*, 199 Ill. 2d at 334)).

¶ 61    As we discussed to some extent earlier in this opinion, under our current constitution, with a few exceptions not relevant here, the circuit court has original subject-matter jurisdiction over all "justiciable" matters. Ill. Const. 1970, art. VI, § 9. "[A] matter is considered justiciable when it presents 'a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.' " *McCormick v. Robertson*, 2015 IL 118230, ¶ 21 (quoting *Belleville Toyota*, 199 Ill. 2d at 335). "Concepts of justiciability are divided into different categories, such as advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). "[T]he overarching purpose of the justiciability requirement is to reserve the exercise of judicial authority for situations where an actual controversy exists." *McCormick*, 2015 IL 118230, ¶ 21. The word "actual" in this context

> " 'requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events.

[Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.' " (Internal quotation marks omitted.) *Ferguson v. Patton*, 2013 IL 112488, ¶ 23 (quoting *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 390 (1994)).

¶ 62 Here, MI served a third-party citation to discover assets on Urban Partnership Bank in an effort to enforce and collect a garnishment judgment that it obtained against Proteus Group. But before the court ruled on PHDS's adverse claim, the court granted Proteus Group's motion to quash. In so doing, the court quashed MI's service of the garnishment summons to Proteus Group and vacated the garnishment judgments that MI obtained against Proteus Group. And since there was no longer a judgment to enforce, the court (1) vacated the third-party citation to discover assets against Urban Partnership Bank, (2) dismissed that citation with prejudice, (3) vacated all orders entered by the court with regard to that citation, and (4) released MI's statutory lien on any assets in that bank account.

¶ 63 At that point, MI had no claim whatsoever on the funds held in Proteus Group's bank account with Urban Partnership Bank. There was no longer an enforceable garnishment judgment, no longer a citation to discover assets, and no basis whatsoever for Urban Partnership Bank to be in court, much less for PHDS to attempt to assert an adverse claim on the money. The circuit court had no power to grant MI or PHDS relief. At most, the circuit court's order served as an advisory judgment, in the event that MI was able, one day, to secure fresh garnishment judgments, issue a new citation to discover assets on Urban Partnership Bank, and join the adverse-claim issue once more with PHDS.

¶ 64 In other words, at the time the circuit court ruled, there was no "actual controversy" between MI and PHDS; the circuit court lacked subject-matter jurisdiction to consider PHDS's adverse claim. *Ferguson*, 2013 IL 112488, ¶ 23. Accordingly, we vacate the circuit court's order granting PHDS's adverse claim and remand the case with instructions to dismiss the claim for lack of subject-matter jurisdiction. See *Waterhouse v. Robinson*, 2017 IL App (4th) 160433, ¶ 20 ("A judgment that lacks subject-matter jurisdiction is void [citation] and must be vacated ***.").

¶ 65 Earlier in this opinion, we reversed the circuit court's order granting the motion to quash and ordered the circuit court, on remand, to reinstate the garnishment judgments. This means, of course, that MI will have the right once again to file a third-party citation against Urban Partnership Bank. Obviously, PHDS has the right to assert an adverse claim once more, too. So the parties will have another opportunity to litigate this question anew.

¶ 66 It is not lost on us that the principal argument on which PHDS relies in support of its adverse claim—that the money held in the Urban Partnership Bank was "identifiable proceeds" of secured collateral—is one it raised for the first time in its reply memorandum below. And one of MI's principal arguments on appeal is that it was not given an adequate opportunity to address that argument (or the accompanying affidavit that supported it), given how late the issue was raised. Should matters proceed again to the litigation of an adverse claim over the Urban Partnership Bank account funds, as we expect they will, the parties will each have the opportunity to fairly and fully litigate the "proceeds" issue, as well as any other issue they may choose to raise.

¶ 67                                        CONCLUSION

¶ 68        In appeal No. 1-16-1120, we reverse the order of the circuit court quashing the four garnishment summonses that MI propounded on Proteus Group pursuant to the Garnishment Act and the Wage Deduction Act. We reverse the circuit court's order vacating the July 6, 2015, garnishment judgments against Proteus Group. We remand the matter to the circuit court with instructions to reinstate the July 6, 2015, garnishment judgments against Proteus Group.

¶ 69        In appeal No. 1-16-0972, we vacate the order of the circuit court granting PHDS's adverse claim with respect to funds in the Urban Partnership Bank account. We remand the case to the circuit court with instructions to dismiss PHDS's adverse claim for lack of subject-matter jurisdiction.

¶ 70        No. 1-16-0972, Judgment vacated and cause remanded with instructions.

¶ 71        No. 1-16-1120, Judgment reversed in part and vacated in part; cause remanded with instructions.